**ANR COAL COMPANY,
INCORPORATED,**
Plaintiff–Appellee,

v.

**COGENTRIX OF NORTH CAROLINA,
INCORPORATED, Defendant–
Appellant.**

No. 98–1753.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 26, 1999.

Decided April 1, 1999.

**ARGUED:** John G. Kester, Williams & Connolly, Washington, D.C., for Appellant. Barbara Kathryn Polich, Parsons, Behle & Latimer, Salt Lake City, Utah, for Appellee. **ON BRIEF:** James T. Fuller, III, Julia B. Shelton, Williams & Connolly, Washington, D.C., for Appellant. Lee A. Spinks, Cynthia V. McNeely, Poyner & Spruill, L.L.C., Charlotte, North Carolina, for Appellee.

Before ERVIN, MOTZ, and TRAXLER, Circuit Judges.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

The magistrate judge in this case vacated an arbitration award, finding that the arbitrator's failure to reveal certain matters violated his "duty to disclose." Because an arbitrator's failure to disclose, in and of itself, provides no basis to vacate an award, and because the facts here do not demonstrate evident partiality by the arbitrator, we must reverse.

### I.

This dispute arises from a coal sales contract between Cogentrix of North Carolina, Inc. and Coastal Coal Sales, Inc., the predecessor in interest of ANR Coal Company, Inc. (collectively "ANR"). Under this contract, Cogentrix agreed to purchase coal from ANR for Cogentrix's Southport, North Carolina facility. Cogentrix used the coal to generate electric power, which it, in turn, sold to Carolina Power & Light Co. Originally, Carolina Power agreed to purchase all of the electric power generated at the Cogentrix Southport facility. Cogentrix and Carolina Power renegotiated their agreement, however, to provide that Carolina Power was no longer obligated to purchase all of the electric power generated at that facility. For this reason, Cogentrix determined that it would have to reduce its electrical power output and, accordingly, sought to decrease its coal purchases from ANR. Asserting that Cogentrix's attempt to reduce its purchases of coal violated the coal sales contract, ANR initiated arbitration to resolve the dispute.

The coal sales contract between Cogentrix and ANR permitted each party to select one arbitrator, with the final arbitrator to be chosen by the other two arbitrators. Cogentrix and ANR each selected an arbitrator, but initially those arbitrators could not agree on a neutral third arbitra-

tor. In accordance with the American Arbitration Association (AAA) Commercial Arbitration Rules, the AAA provided the parties with the names and qualifications of ten potential neutral arbitrators. Each side had three preemptory strikes and could also make challenges for cause. ANR objected to the list as too heavily weighted toward the utility industry, and specifically objected for cause to two potential arbitrators on the list. The AAA struck those two names from the list, as well as one name to which Cogentrix objected, and replaced them with three new names, including Wilburn Brewer, a partner at the Columbia, South Carolina law firm of Nexsen, Pruet, Jacobs & Pollard.

ANR then asked that Brewer be removed from the list for cause because his law firm represented Carolina Power. The AAA refused to take Brewer off the neutral list explaining that, although Brewer's firm represented Carolina Power in "electrocution cases ... which are sporadically filed," Brewer himself "never personally represented" Carolina Power. ANR used its three preemptory strikes, but chose not to strike Brewer. Each party then ranked the ten potential neutral arbitrator candidates; Brewer, the individual with the highest average ranking, was chosen as the neutral arbitrator.

In its December 19, 1996 letter announcing Brewer's selection as the neutral arbitrator, the AAA listed the following disclosures by Brewer:

In 1987, his firm merged with Moore & Van Allen [the firm representing Cogentrix at arbitration and on appeal] and then separated in 1988. During 1988, Mr. Brewer was ill with leukemia and not actively practicing law or involved with the firm. Through this temporary merger, Mr Brewer knows Mr. Davis [counsel in this matter for Cogentrix].

Mr. Brewer is confident that this will not affect his ability to impartially hear and determine this dispute.

Unless we are advised to the contrary by January 15, 1997, we will assume that the Parties waive any presumption of bias by the Arbitrator based on this disclosure.

ANR did not renew its request to remove Brewer.

Two months later, on February 13, 1997, the AAA sent a letter to the parties addressing scheduling; an enclosure in that letter included another, similar disclosure signed by Brewer and again stated that the failure of a party to respond by a certain date (February 24) would constitute a waiver of any presumption of bias based on the disclosure. Again, ANR did not renew its request to remove Brewer. ANR maintains that it declined to object to Brewer because "[g]iven there was no assurance the challenge would be granted, a failed challenge could potentially offend the 'neutral' arbitrator as a challenge to his integrity."

The arbitrators ruled 2–1 for Cogentrix, with Brewer in the majority. ANR contends that, after the arbitration award, it learned that Brewer's law firm had represented Carolina Power in cases involving the utility's right to deliver electric service, "contrary to the earlier disclosures ... that his firm only represented [Carolina Power] in electrocution cases." Furthermore, ANR learned that Moore & Van Allen, the law firm that represented Cogentrix in the arbitration, had also represented Cogentrix in 1988 when Moore & Van Allen was merged with Nexsen Pruet, and that in 1983 certain attorneys at Moore & Van Allen had loaned money to Cogentrix in consideration for stock warrants in the company.

▇▇▇ ANR filed a civil complaint asking the court to vacate the arbitration award, which the magistrate judge promptly did.[1] We review de novo an

---

1. The Federal Arbitration Act (the FAA) requires "[n]otice of a motion to vacate, modify, or correct an arbitration award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (1994). ANR

order vacating an arbitration award. *See Consolidation Coal Co. v. Local 1643, United Mine Workers of America,* 48 F.3d 125, 128 (4th Cir.1995). A district court's underlying factual findings will stand unless clearly erroneous. *See id.* The clearly erroneous rule, however, "does not protect findings 'made on the basis of the application of incorrect legal standards.'" *Id.* (quoting *Pizzeria Uno Corp. v.Temple,* 747 F.2d 1522, 1526 (4th Cir.1984)).

ANR maintains that two rationales support vacatur of the arbitration award. We discuss each in turn.

## II.

First, and principally, ANR contends that Brewer's failure to disclose the full extent of his relationship to Cogentrix constitutes a basis for vacating the arbitration award. The magistrate judge apparently agreed, reasoning that Brewer violated his "duty to disclose all information regarding his present and past relations with Cogentrix and other interested parties."

. Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10 (1994) (the FAA), lists the grounds that may form the basis for vacatur of an arbitration award. These include proof that an award was procured by fraud, corruption, or undue means, or resulted from an arbitrator's evident partiality, corruption, misconduct, or the like. *See* 9 U.S.C. §§ 10(a)(1)-(3). The statute makes no mention of an arbitrator's failure to disclose information as a basis for vacating an' arbitration award.

▮ Implicitly recognizing the lack of statutory authority for vacating an award based on a failure to disclose, ANR rests its argument on the AAA Commercial Arbitration Rules, which the coal sales contract provides govern the arbitration here.[2] Specifically, ANR contends that Brewer's failure to disclose violated AAA Rule 19 and that this violation requires vacatur of the arbitration award.

Rule 19 provides:

Any person appointed as neutral arbitrator *shall disclose to the AAA any circumstance likely to affect impartiality,* including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Upon receipt of such information from the arbitrator or another

---

served a civil complaint in this case, seeking to vacate the arbitration award, within three months of the filing of the award. But Cogentrix maintains that ANR's failure to serve notice of a *motion* to vacate "forfeits [ANR's] right to judicial review of the award." The FAA sets forth the sole method to challenge an arbitration award—"by serving a motion to vacate within three months of the rendering of the award," *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986)—and does not permit "a party to initiate a challenge to an arbitration award by filing a complaint." *O.R. Securities, Inc. v. Professional Planning Associates, Inc.,* 857 F.2d 742, 745 (11th Cir.1988). Thus ANR clearly erred by labeling its pleading a civil complaint, rather than a motion to vacate. Cogentrix, however, cannot point to any prejudice resulting from this error. No court has held that this sort of mistake forfeits a party's right to judicial review when the opposing party fails to demonstrate any prejudice. *See, e.g., id.* at 745 ("The liberality of the ... Federal Rules is such that an erroneous nomenclature does not prevent the court from recognizing the true nature of a mo-

tion.") (internal quotation marks and citation omitted). We will not so hold here. Such a ruling would, as the magistrate judge observed, undeniably "elevate form over substance."

**2.** ANR also briefly relies on Canon II of the AAA Code of Ethics for Arbitrators in Commercial Disputes. Canon II states that "arbitrators should disclose the existence of interests or relationships that are likely to affect their impartiality or that might reasonably create an appearance that they are biased against one party" and should "make a reasonable effort to inform themselves of any interests or relationships described in the preceding paragraph." Even if Brewer violated Canon II (and it is not at all clear that he did), the Code of Ethics itself forecloses any use of such a violation as a basis for vacatur. The Preamble of the Code specifically states that "it does not form part of the arbitration rules of the [AAA]" and "does not establish new or additional grounds for judicial review of arbitration awards."

source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

AAA Commercial Arbitration Rule 19 (1996) (emphasis added). The language of this Rule does not require a potential arbitrator to disclose *every* interest or relationship with a party that could conceivably be regarded as a basis for bias. Rather, it only requires disclosure of an interest or relationship "likely to affect impartiality." Even so, ANR contends that Rule 19 imposes a "mandatory nondiscretionary" disclosure duty on an arbitrator, that Brewer violated this duty, and that this violation requires vacatur of the arbitration award.

ANR relies heavily on *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). There, the petitioner failed to demonstrate actual bias, but the Supreme Court nonetheless vacated the arbitration award because the "neutral" arbitrator, an engineering consultant, did not reveal that one of his regular customers was a party in the arbitration. *Id.* at 146, 89 S.Ct. 337. Although the *Commonwealth Coatings* Court explicitly stated that the statutory "evident partiality" ground, 9 U.S.C. § 10(a)(2), provided the basis for its decision, it suggested that arbitrators may have the same disclosure and recusal obligations as Article III judges. 393 U.S. at 147–48, 89 S.Ct. 337. Moreover, the Court noted that "[w]hile not controlling" in the case before it (presumably because the parties did not agree to be governed by the AAA Rules) what is now AAA Rule 19 (then Rule 18) was "highly significant," because the rule demonstrated that "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." *Id.* at 149. ANR thus reads *Commonwealth Coatings* as recognizing that the "failure to comply with a mandatory obligation to disclose all possible conflicts," assertedly like that imposed by AAA Rule

19, provides "a proper basis under the FAA for vacating an award."

ANR misinterprets *Commonwealth Coatings*. In that case, the Supreme Court made its strong statements as to the importance of disclosure in a context far different from that involved here. In *Commonwealth Coatings*, the arbitrator had kept secret "a repeated and significant" relationship that existed "over a period of four or five years" with one of the parties, which resulted in the party paying the arbitrator $12,000 in professional fees. 393 U.S. at 146, 89 S.Ct. 337. Moreover, even in the face of these facts, the Supreme Court did not suggest that an arbitrator has a duty to reveal "all information regarding his past or present relations with" a party, as the magistrate judge did here.

Rather, the *Commonwealth Coatings* Court observed that a less onerous obligation sufficed: "[w]e can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties *any dealings that might create an impression of possible bias."* *Id.* at 149, 89 S.Ct. 337 (emphasis added). Furthermore, Justice White, joined by Justice Marshall in concurrence, agreed that an arbitrator need not "provide the parties with his complete and unexpurgated business biography." *Id.* at 150, 89 S.Ct. 337(White, J., concurring). Instead, "it is enough ... to hold, as the Court does, *that where an arbitrator has a substantial interest in a firm which has done more than trivial business with a party, that fact must be disclosed."* *Commonwealth Coatings*, 393 U.S. at 151, 89 S.Ct. 337 (White, J., concurring) (emphasis added). Justice White explained that subjecting arbitrators to extremely rigorous disclosure obligations would diminish one of the key benefits of arbitration: an arbitrator's familiarity with the parties' business. *Id.* at 150, 89 S.Ct. 337 (recognizing that it is "because [arbitrators] are men of affairs, not apart from but of the marketplace,

that they are effective in their adjudicatory function").[3]

Failure to disclose the sort of attenuated, nonsubstantial relationships at issue here violates neither the teaching of *Commonwealth Coatings* nor AAA Rule 19. As Judge Posner (citing Justice White's concurrence) observed in a similar situation, to hold that Rule 19 "requires disclosure of every former social or financial relationship with a party or a party's principals" would make it "impractical for persons in the business world to be arbitrators, thereby depriving the parties of the services of those who might be best informed and qualified to decide particular types of cases." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 677 (7th Cir. 1983).

 Even if Brewer's failure to disclose had violated Rule 19, that would not, by itself, require or even permit a court to nullify an arbitration award. When parties agree to be bound by the AAA rules, those rules do not give a federal court license to vacate an award on grounds other than those set forth in 9 U.S.C. § 10. Thus, although the AAA rules provide significant and helpful regulation of the arbitration process, they "are not the proper starting point for an inquiry into an award's validity." *Merit*, 714 F.2d at 677. Rather, in determining whether to set aside an arbitration award, a court may only consider whether the complaining party has demonstrated a violation of the governing statute. *See Consolidation Coal*, 48 F.3d at 130 n. 5; *Hobet Mining, Inc. v. International Union, United Mine Workers of America*, 877 F.Supp. 1011, 1015–19 (S.D.W.Va.1994). The material and relevant facts an arbitrator fails to disclose may demonstrate his "evident partiality" under 9 U.S.C. § 10(a)(2). However, nondisclosure, even of such facts, has no independent legal significance and does not in itself constitute grounds for vacating an award.

 None of the cases upon which ANR relies hold to the contrary. *Health Services Management Corp. v. Hughes*, 975 F.2d 1253 (7th Cir.1992), and *Rogers v. Schering Corp.*, 165 F.Supp. 295 (D.N.J. 1958), *aff'd*, 271 F.2d 266 (3d Cir.1959), involve the AAA's violation of Rule 19 by failing to disclose certain critical information about the arbitrator's conflicts to the parties. The *Rogers* court held, and the *Health Services* court stated in *dicta*, that the AAA's failure to reveal these vital facts will provide a basis for vacatur *when* this nondisclosure produces an award by a partial arbitrator and so violates 9 U.S.C. § 10(b). Nor do *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir.1994), or *Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157 (8th Cir.1995), assist ANR. Those courts simply concluded that under the circumstances presented to them, the arbitrator's failure to disclose critical facts *did* demonstrate his evident partiality under 9 U.S.C. § 10(a)(2).[4] ANR has failed

---

3. Because the vote of either Justice White or Justice Marshall was necessary to create a majority, courts have given this concurrence particular weight. *See, e.g., Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir.1993); *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 82–83(2d Cir.1984); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682(7th Cir.1983). Yet ANR totally ignores it.

4. The *Schmitz* court also stated that an arbitrator may have an "enhanced duty to investigate" potential facts that might be relevant to his bias, but this was in the context of an arbitration conducted under the more demanding rules of the National Association of Security Dealers, which require an arbitrator to "make such an investigation regarding the actual parties to th[e] arbitration." 20 F.3d at 1048. The AAA rules contain no similar requirement; the AAA Code of Ethics does provide an investigation directive (albeit a less strict one) but, by its own terms, the Code provides no basis for vacatur. *See supra* n.2. Nor does an arbitrator have some general "enhanced duty" to investigate. *See Al–Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C.Cir. 1996) (finding "no source for any such generalized duty"). Of course, if an arbitrator fails to investigate facts that come to light after the award, and those facts are not trivial, the aggrieved party may use this information to

to cite a single case holding that a failure to disclose in violation of the arbitration rules constitutes an independent basis for vacatur absent proof that, in addition, the nondisclosure proves one of the statutory grounds for vacatur.

Not only does precedent thus compel our rejection of ANR's contention, but sound policy also counsels this result. Parties value commercial arbitration, at least in part, because they "prefer a tribunal knowledgeable about the subject matter of their dispute to a generalist court with its austere impartiality but limited knowledge of subject matter." *Merit,* 714 F.2d at 679; *see also Morelite Constr. Corp. v.New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79,83 (2d Cir.1984) ("parties agree to arbitrate precisely because they prefer a tribunal with expertise regarding the particular subject matter of their dispute"). The approach proposed by ANR would permit a "disgruntled party" to seize upon an undisclosed relationship "as a pretext for invalidating the award." *In re Andros Compania Maritima, S.A.,* 579 F.2d 691, 700 (2d Cir.1978). Under such a rule, an arbitration award could be vacated due to an arbitrator's failure to disclose a trivial fact even though that fact, if known prior to the arbitration, would not have enabled the losing party to have the arbitrator removed for cause. Such a system would undermine the parties faith in commercial arbitration and make the task of finding qualified arbitrators "exceedingly burdensome." *Peoples Security Life Ins. Co. v.Monumental Life Ins. Co.,* 991 F.2d 141, 146 (4th Cir.1993).

In sum, we hold that an arbitrator's failure to reveal facts may be relevant in determining evident partiality under 9 U.S.C. § 10(a)(2), but that mere nondisclosure does not in itself justify vacatur.

demonstrate evident partiality under 9 U.S.C. § 10(a)(2). However, if those facts do not demonstrate statutory grounds for vacatur, a

## III.

Alternatively, ANR maintains that Brewer's failure to disclose demonstrates his "evident partiality" and for this reason provides grounds for vacatur under 9 U.S.C. § 10(a)(2). The party seeking vacatur has the burden of proof; to meet this burden, he must demonstrate "that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Consolidation Coal,* 48 F.3d at 129 (internal quotation marks and citations omitted).

A court should examine four factors to determine if a claimant has demonstrated evident partiality: (1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding. *See id.* at 130. Although the magistrate judge outlined this standard, he failed to apply it properly. Instead, relying on Brewer's failure to disclose, the judge conclusorily held that "a reasonable person might conclude that Mr. Brewer might be inclined to rule in favor of Cogentrix."

In determining whether a party has demonstrated evident partiality,a court should evaluate the facts in light of each of the above four factors. When considering each factor, the court should determine whether the asserted bias is "direct, definite and capable of demonstration rather than remote, uncertain or speculative" and whether the facts are sufficient to indicate "improper motives on the part of the arbitrator." *Consolidation Coal,* 48 F.3d at 129. A party need not prove that the arbitrator, in fact, had improper motives. To do so would make the

failure to investigate will not provide a court with grounds to vacate the award.

standard for evident partiality equivalent to proving actual bias. *See id.* But a party seeking vacatur must put forward facts that *objectively* demonstrate such a degree of partiality that a reason-able person could assume that the arbitrator had improper motives. The movant carries a "heavy" burden, *see Peoples,* 991 F.2d at 146,in order to meet this "onerous" standard, *see Al–Harbi,* 85 F.3d at 683.

 ANR contends that Brewer's failure to disclose two sets of facts demonstrates his evident partiality.[5] We apply the four-factor test to each.

 First, ANR points to the representation of Carolina Power in electric service cases by Brewer's firm—Nexsen Pruet. ANR maintains that if the arbitrators had determined that Cogentrix breached the coal sales contract, then Cogentrix would have passed the costs of this breach on to its sole customer, Carolina Power. Brewer, according to ANR, thus had a "personal interest" in finding no breach, *i.e.,* protecting his firm's client, Carolina Power, from incurring these costs.

ANR proffered no direct or definite evidence of this personal interest; no evidence that the contractual relationship between Carolina Power and Cogentrix required, or permitted, these costs to be passed on to Carolina Power; and no evidence that even if this happened it would have affected Carolina Power's relationship with Nexsen Pruet. Furthermore, the claim that these facts demonstrate Brewer's personal interest in Cogentrix is severely undercut by ANR's pre-award willingness to accept Brewer despite its knowledge that Nexsen Pruet represented

Carolina Power in electrocution cases. To be sure electrocution cases involve a different subject matter and perhaps a different expertise than electric service cases, but in both situations Carolina Power, the asserted indirect beneficiary of Brewer's arbitration decision, was a client of Brewer's firm, Nexsen Pruet. In sum, ANR has failed to offer evidence that Brewer had any "personal interest" in the arbitration. *See Cook Indus., Inc. v. C. Itoh & Co.,* 449 F.2d 106 (2d Cir. 1971) (upholding award even though one arbitrator was employee of a company that had a major supply contract with party to arbitration).

Similarly, ANR has not demonstrated that Nexsen Pruet's representation of Carolina Power evidences any "direct" relationship between Brewer and Cogentrix. Nor can ANR point to any real "connection" between that relationship and the arbitration. Carolina Power was not a party to the arbitration; Nexsen Pruet's representation of the utility is thus a step removed from the arbitration proceeding. In *United States Wrestling Fed'n v. Wrestling Division of AAU, Inc.,* 605 F.2d 313 (7th Cir.1979), the court held that an arbitrator's connection with a non-party did not constitute evident partiality even though the non-party had a relationship with a party to the arbitration. Here the connection between Brewer, the arbitrator, and the party he is alleged to favor, Cogentrix, is even more attenuated. Brewer himself never personally represented Carolina Power. Thus, the "connection" between Brewer and Cogentrix is virtually nonexistent. The final *Consolidation Coal* factor, proximity in time, does favor ANR

---

**5.** Cogentrix argues that ANR waived its right to contest the impartiality of the arbitrator when it failed to assert a second challenge for cause after Brewer's initial disclosures. Normally, such a failure might preclude a party from challenging the impartiality of the arbitrator. *See Cook Indus., Inc. v. C. Itoh & Co.,* 449 F.2d 106 (2d Cir.1971). ANR, however, first learned of the challenged relationships *after* the award. Therefore, it certainly has

not waived its rights to object to this information. *See Morelite,* 748 F.2d at 84 n. 5. Furthermore, because a court must look at all relevant facts to determine evident partiality, even though ANR did not reiterate its challenge to Brewer, ANR has not waived its right to object to the cumulative effect of the information disclosed pre-award when combined with that learned post-award.

because at the time of the arbitration Nexsen Pruet represented Carolina Power. But this factor is of little significance in view of ANR's lack of proof as to the other factors.

■ The second series of facts upon which ANR relies dates back to 1983. At that time certain attorneys with Moore & Van Allen lent money to Cogentrix, and in exchange they received stock warrants that permitted them to acquire, collectively, a six percent equity interest in Cogentrix. Thus when Nexsen Pruet briefly merged with Moore & Van Allen in 1988, some members of the consolidated firm, which represented Cogentrix, owned a small interest in Cogentrix. The third factor—connection to the arbitration—may weigh in ANR's favor in this instance because the arbitrator's merged firm assertedly once represented one of the parties (rather than an alleged third party beneficiary) and some members of that firm owned a small ownership interest in that party. The other factors, however, clearly do not.

Indeed, it is difficult to understand how the facts of this case demonstrate any "personal interest" on Brewer's part, let alone one that is direct and proximate in time to the arbitration. *See Al–Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C.Cir. 1996) (no evident partiality demonstrated by the fact that an arbitrator's former law firm had represented the prevailing party in matters unrelated to the arbitration). The brief relationship between Brewer and Cogentrix through the Moore & Van Allen merger is about as indirect and tenuous a relationship as can be imagined. ANR seems to imply that the merger proves that Brewer himself at one time represented Cogentrix or owned a share of the company. This view ignores the surrounding undisputed facts. The law firm merger of one year's duration took place ten years prior to the arbitration, at a time when Brewer was battling leukemia and not practicing law. Moreover, during the merger, Nexsen Pruet remained in Columbia while Moore & Van Allen remained in Charlotte. ANR has not alleged that *any* members of Nexsen Pruet personally represented Cogentrix or owned any shares of Cogentrix stock. Since Brewer was ill and not working at that time, his connection to Cogentrix is even more remote. *See Ilios Shipping & Trading Corp. v. American Anthracite & Bituminous Coal Corp.*, 148 F.Supp. 698, 700 (S.D.N.Y.1957) ("Something more than a vague and rather remote business relationship between the arbitrator and one of the parties to the arbitration is certainly needed if the losing party seeks to vacate the award on the ground of 'evident partiality' of one of the arbitrators.") (citations omitted).

ANR has not carried its burden of proffering facts that, alone or taken together, would permit a reasonable person to assume that Brewer was partial to Cogentrix. A trivial relationship, even if undisclosed, will not justify vacatur of an arbitration award. The facts here demonstrate nothing more than a trivial relationship between Brewer and the prevailing party, Cogentrix.

## IV.

For the foregoing reasons, we reverse the magistrate judge's vacatur of the arbitration award and remand the case with instructions to reinstate the award.

*REVERSED AND REMANDED.*