

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-2007

# HSM Constr Ser v. MDC Sys Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2584

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"HSM Constr Ser v. MDC Sys Inc" (2007). *2007 Decisions.* Paper 762.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/762

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 06-2584

———


HSM CONSTRUCTION SERVICES, INC.;
HSM MANAGEMENT SERVICES, INC.,
Appellants

v.

MDC SYSTEMS, INC.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-05983)
District Judge: Honorable Ronald L. Buckwalter

———

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2007

Before: SLOVITER, HARDIMAN, and ROTH, Circuit Judges

(Filed   July 16, 2007 )

———

OPINION

———

SLOVITER, Circuit Judge.

Appellants HSM Construction Services, Inc. ("Construction") and HSM

Management Services, Inc. ("Management") (jointly referred to as "HSM" unless

otherwise noted) appeal from the District Court's order confirming an arbitration award in

favor of the appellee, MDC Systems, Inc. HSM argues that the Arbitration Panel

manifestly disregarded the law and was evidently partial to MDC Systems, Inc.[1]

**I.**

Because the parties are familiar with the facts, we adopt the factual scenario as

stated by the District Court in its opinion:

> The present case stems from a lawsuit regarding the construction of
> the Rosewood Care Center of St. Charles, Illinois, in which Construction
> was a named defendant. To aid in its defense of that lawsuit, Construction
> hired MDC Systems, Inc. ("MDC") to prepare expert engineering reports.
>
> By a letter dated July 18, 2002, MDC drafted a Proposal of Expert
> Consulting Services. Throughout the Proposal, MDC refers to the other
> party to the contract as "HSM" and does not specify whether it is referring
> to "HSM Management" or "HSM Construction." By a letter dated July 19,
> 2002, printed on "HSM Management Services, Inc." letter head, "HSM"
> provided supplementary terms and conditions. The fax also included the
> signature page of the Proposal, which was signed by General Counsel for
> "HSM." Afterwards, HSM Management Services, Inc. paid the initial
> retainer and made two subsequent partial payments to MDC.
>
> Construction and Management argue[d] that MDC prepared an
> unusable expert disclosure report. As a result, MDC was not paid for the

---

[1]The District Court had diversity jurisdiction over this action
pursuant to 28 U.S.C. § 1332. This court has jurisdiction over the
appeal pursuant to 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. § 1291.

balance due under the contract. MDC then submitted a Demand for Arbitration to the American Arbitration Association ("AAA") seeking relief of $80,662.53 in unpaid fees from only "HSM Management Services, Inc." Construction was not named as a party on MDC's initial Demand.

On March 16, 2004, the arbitration Panel conducted a preliminary hearing conference call. Management argued that it was not a party to the contract in question. The Panel later amended the caption from "HSM Management, Inc." to "HSM, Inc., HSM Management, Inc., and HSM Construction Services, Inc."

HSM Constr. Serv., Inc. v. MDC Sys., Inc., 2006 WL 1030229, at *1 (E.D.Pa. Apr. 13, 2006).

At the conclusion of the arbitration, the panel issued a decision in favor of MDC and held Construction and Management jointly and severally liable for $86,969. HSM raises two issues in its appeal. It argues first, that "the District Court err[ed] in determining that the arbitration panel did not manifestly disregard the law by finding Management liable to MDC where Management was not a party to the agreement between Construction and MDC[.]" Appellants' Br. at 3. Second, it argues that the District Court erred in determining that the arbitration panel was not evidently partial to MDC.

## II.

## A.

We consider first which law applies. HSM argued in the District Court that the

3

Federal Arbitration Act ("FAA") applies, whereas MDC argued that the Delaware

Uniform Arbitration Act ("DUAA") applies. The District Court decided that "the

provisions of the FAA and the DUAA that are applicable in this case, the 'evidently

partial' standard and the 'manifest disregard of the law' standard, are identical" and

therefore it declined to decide which law applies because the result would be the same.

2006 WL 1030229, at *2. We agree with the District Court in this respect.

This court reviews a district court's denial of a motion to vacate a commercial

arbitration award de novo. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In

reviewing a district court's order confirming an arbitration award, this court reviews the

district court's factual findings for clear error and exercises plenary review over the

district court's determination on questions of law. See China Minmetals Materials Imp.

& Exp. Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 278-79 (3d Cir. 2003) (citing First

Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995)); Kaplan v. First

Options of Chicago, Inc., 19 F.3d 1503, 1509 (3d Cir. 1994), aff'd, 514 U.S. 938 (1995).

**B.**

HSM contends that Management was never a party to the agreement with MDC

(the "Agreement") because it neither signed the Agreement nor was a party to the

underlying lawsuit concerning the construction of the Rosewood Care Center. Because

the issue as to whether Management was a party to the arbitration agreement is an issue of

arbitrability, the court must make an independent determination. See First Options, 514 U.S. at 943-45.

The parties' objective manifestations control in deciding whether they formed a contract by mutual assent. Management's outward words and acts indicate that it is a party to the Agreement. First, the signature page of MDC's Proposal and the July 19, 2002 letter from "HSM" to MDC (the "Letter") were both signed by Dennis McCubbin, the General Counsel of Management and Construction, on behalf of "HSM." Although neither MDC nor McCubbin explicitly specified whether "HSM" referred to Management or Construction, both the Letter and its fax cover sheet were on Management's letter head. "HSM Management Services, Inc.," as it appears on both the letter head and fax cover page, is the only full name on those documents that is consistent with the abbreviation of "HSM." This leads to the conclusion that the "HSM" referred to in the Letter as a party must be "HSM Management Services, Inc."

Second, Management is the entity that paid MDC's fees for its service. The checks payable to MDC for its service were all under Management's name. Indeed, it paid the initial retainer and the two subsequent partial payments. Although Management contends that it paid the check on behalf of Construction, there was no outward indication of such subjective and undisclosed intention. From the objective acts of Management, it was Management who signed the Agreement and performed the obligation to pay under

5

the Agreement. Thus, Management is a party to the Agreement.

Management argues that it never was a party to the underlying Rosewood Care Center lawsuit, and therefore it could not be a party to the Agreement, which retained MDC to provide expert services for the underlying proceeding. However, Management had an interest in the proceeding, because it possessed one of the claims for which Construction sought indemnification in the Rosewood Care Center lawsuit. Moreover, whether Management is a party to the underlying lawsuit is not directly related to the question as to which entity is the party to the Agreement. The objective manifestation by Management was sufficient to indicate its assent to be a party to the Agreement.

Management also argues that MDC's president "knew MDC was dealing with Construction, not Management." Appellants' Br. at 16. It notes that MDC's president, in response to questioning at the arbitration hearing, appears to have agreed that references to "HSM" in the expert report were specifically meant to indicate "HSM Construction Services, Inc." because "they were the party to the contract, so it would only be proper to do that." App. at 41.

MDC does not fully respond to the foregoing argument. Although these statements show that MDC knew that it was providing services to Construction, they do not lead to the conclusion that MDC knew it was not also signing the Agreement with Management.

The contract between the parties was the subject of a broad arbitration clause

6

covering "all" disputes arising from the transaction. App. at 50. We conclude that Management's outward manifestations were clear enough to find its objective intention to be a party and accordingly hold that it is bound by the arbitration award.

## C.

We turn then to the second issue, HSM's argument that "the District Court erred in determining that the arbitration panel was not evidently partial to MDC where MDC informed the arbitration panel in writing that Construction and Management 'ha[ve] not paid the AAA-required fees or deposits,'" Appellants' Br. at 3, and the panel was made aware that HSM "were not paying [their] share of the arbitration fees" in the conference after the first day of the hearing. App. at 82. This issue arose from a letter sent by MDC to the Arbitration Panel on July 12, 2004, stating, in part, "HSM has not paid the AAA-required fees or deposits, nor has it requested *in forma pauperis* relief[.]" App. at 78. Originally, the arbitration was to be for a single day, but the panel believed a second day would be required. HSM argues that because the salary of the arbitrators "originate[s]" from the arbitration fees, the Panel has a financial interest "in the outcome of the arbitration," and thus created, at the very least "an appearance of impropriety." Appellants' Br. at 21.

MDC responds that during the conference after the first day of the arbitration hearing, no party (MDC, AAA or the Arbitration Panel) other than HSM itself could have known that HSM planned to refuse to pay its share of fees. Therefore, even if the Panel

7

did know of HSM's intention, HSM has not proven that it was MDC who told the arbitrators so. MDC also argues that if evident partiality may be found based on the fact that an arbitration panel knows a party refused to pay arbitration fees, it would be easy for parties to get rid of an arbitration award simply by voluntarily telling the panel that it did not pay arbitration fees. The District Court refused to find evident partiality of the Arbitration Panel, because HSM failed to prove that the July 12, 2004 letter of MDC actually reached the Panel, and failed to submit any additional evidence of bias.

The courts have not clearly articulated the standard to be applied in interpreting section 10 of the Federal Arbitration Act which provides that courts may vacate an arbitration award if an arbitrator shows "evident partiality." 9 U.S.C. §10(a)(2). On one hand, the Supreme Court has stated that evident partiality is shown when arbitrators fail to disclose "any dealings that might create an impression of possible bias." Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 149 (1968). The arbitrators "not only must be unbiased but also must avoid even the appearance of bias." Id. at 150. On the other hand, this court has appeared to adopt what we refer to as a "reasonably construed" bias standard, which finds evident partiality only when "a reasonable person would have to conclude that the arbitrator was partial to [one] party to the arbitration." Kaplan, 19 F.3d at 1523 n.30 (quoting Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358 (6th Cir. 1989)). The reasonably construed bias standard requires proof of circumstances "powerfully suggestive of bias." Id. (quoting Merit Ins. Co. v. Leatherby Ins. Co., 714

8

F.2d 673, 681-82 (7th Cir. 1983)).

The First, Second, Fourth, Sixth, Seventh, Ninth and Eleventh Circuits have adopted the reasonably construed bias standard, albeit not under that name. See Morelite Const. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984) (evident partiality will be found where "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration"); JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Local 103, 324 F.3d 42, 51 (1st Cir. 2003) (same); ANR Coal Co., Inc. v. Cogentrix of N.C., Inc., 173 F.3d 493, 500-01 (4th Cir. 1999) (same); Apperson, 879 F.2d at 1358 (same); see also Gianelli Money Purchase Plan and Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998); Toyota of Berkeley v. Auto. Salesman's Union, Local 1095, 834 F.2d 751, 756 (9th Cir. 1987) ("the party alleging bias must establish facts that create a reasonable impression of partiality") (internal citation and quotation marks omitted); Merit Ins. Co., 714 F.2d at 681.

We need not decide the standard of bias in this case because HSM has failed to show evident partiality of the arbitrators even under the more generous standard of "appearance of bias." The District Court found that it was unclear whether MDC's letter actually reached the Panel members. Without clear error, we will not reverse a factual finding of the District Court. The District Court also held that there is "no additional evidence of bias." 2006 WL 1030299, at *3. We agree. Although HSM has stated that

9

the Arbitration Panel learned that HSM was planning not to pay arbitration fees in the conference after the hearing, it is no more than a conclusory assertion. The only evidence in the record regarding this allegation is the affidavit of HSM's General Counsel, McCubbin, who stated, "[o]n February 2, 2005, the arbitrators were aware that [Construction and Management] were not paying a share of the arbitration fees." App. at 82. No other evidence is cited to support McCubbin's allegation or to prove that it was MDC who informed the Panel of HSM's intention to avoid arbitration fees.

Even if HSM had proven that the Arbitration Panel was aware of HSM's intention not to pay the arbitration fee, such awareness itself is not sufficient to show that the arbitrators had a financial interest in the outcome of the arbitration. Rule 54 of the AAA's Commercial Rules of Arbitration provides that the AAA may suspend or terminate the hearing or proceeding if arbitration fees are not paid on time. The fact that the arbitration proceeded suggests that the fees were paid, no matter which party actually paid them. HSM conceded that if it did not pay the arbitration fees, MDC "would have to pay the fees for both parties in order for the arbitration to proceed." App. at 82. Therefore, the Panel did not have any financial interest in the outcome of the arbitration, because the fees would have been paid as long as the proceeding continued.

In conclusion, HSM has failed to prove that MDC's July 12, 2004 letter actually reached the Arbitration Panel, and it has not provided any additional evidence showing bias of the arbitrators. Even under the generous standard of "appearance of bias," we

conclude that HSM has failed to raise any genuine issue of bias.

### III.

For the reasons set forth, we will affirm the District Court's order confirming the arbitration award.