# United States Court of Appeals
## For the First Circuit

No. 20-1237

UBS FINANCIAL SERVICES, INC.; UBS FINANCIAL SERVICES
INCORPORATED OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO,

Petitioners, Appellees,

v.

ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO
RICO,

Respondent, Appellant.

No. 20-1238

ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO
RICO,

Plaintiff, Appellant,

v.

UBS FINANCIAL SERVICES, INC.; UBS FINANCIAL SERVICES
INCORPORATED OF PUERTO RICO; UBS TRUST COMPANY OF PUERTO RICO,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF PUERTO RICO

[Hon. William G. Young,* U.S. District Judge]

---

* Of the District of Massachusetts, sitting by designation.

Before

Thompson and Lipez, <u>Circuit Judges</u>,
and Laplante,** <u>District Judge</u>.

———————————————

    <u>Daniel N. Marx</u>, with whom <u>William W. Fick</u> and <u>Fick & Marx LLP</u> were on brief, for appellant.

    <u>Ross E. Firsenbaum</u>, with whom <u>Peter G. Neiman</u>, <u>Ilya Feldsherov</u>, and <u>Wilmer Cutler Pickering Hale and Dorr LLP</u> were on brief, for appellees.

———————————————

May 7, 2021

———————————————

** Of the District of New Hampshire, sitting by designation.

**Laplante, District Judge.** Asociación de Empleados del Estado Libre Asociado de Puerto Rico ("AEELA"), a private financial institution serving Puerto Rico government employees, suffered significant investment losses when the market for municipal bonds in Puerto Rico crashed in 2013. Blaming its exposure to those assets on its former financial consultant, UBS Financial Services, Inc. and related entities (collectively, "UBS"), AEELA initiated arbitration with UBS before the Financial Industry Regulatory Authority ("FINRA"). A panel of three neutral arbitrators unanimously entered an arbitration award denying AEELA's claims. AEELA sought to vacate the award in the district court on the ground that one of the arbitrators had failed to disclose that he had several professional connections to UBS. The district court confirmed the arbitration award, ruling that AEELA had failed to show that those undisclosed connections amount to "evident partiality" warranting vacatur under section 10 of the Federal Arbitration Act. We affirm.

## I. Standard of Review

We review a district court's decision to confirm or vacate an arbitration award de novo. Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc., 274 F.3d 34, 35 (1st Cir. 2001). The burden is on the party challenging the arbitral award to establish that it should be set aside. Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 48 (1st Cir. 2017).

- 3 -

## II.  **Background**[1]

AEELA is a private, not-for-profit institution with more than 200,000 members who are current and former Puerto Rico government employees.  AEELA offers its members a range of financial and insurance services, including retirement accounts, mortgage loans, and life insurance.  By law, AEELA must procure "specialized professional services" to invest its members' funds. See P.R. Laws Ann. tit. 3, § 9009.  From 2006 until mid-2013, AEELA engaged UBS to provide those services.  In a "consulting services agreement," the parties agreed to arbitrate their disputes in a FINRA forum.

In April 2014, AEELA commenced an arbitration proceeding against UBS before FINRA.  AEELA asserted claims for fraud, negligence, breach of fiduciary duty, breach of contract, failure to supervise and control, and violations of federal and Puerto Rico securities laws.  The gist of the claims was that UBS had made unsuitable investment recommendations that caused AEELA to purchase and hold certain Puerto Rico municipal bonds between 2010 and 2012.  That investment led to approximately $70 million in losses when the Puerto Rico municipal bond market collapsed in the fall of 2013.

---

[1] We draw the facts primarily from the record on appeal.  Some uncontested facts that help contextualize the proceedings below are drawn from the parties' appellate briefs, but we note that those facts do not impact our holding in this case.

- 4 -

Pursuant to FINRA rules, the parties had to select three arbitrators to settle their dispute. See FINRA Rule 12403. FINRA allowed the parties to choose from a pool of thirty candidates. Each party could strike twelve candidates and rank the others in order of preference. FINRA provided the parties with each candidate's disclosure report[2] and gave them three weeks to submit strikes and rankings. This process led to the selection of Gerald Silverman, Sidney Blum, and Clement Osimetha to serve on the arbitral panel.

Osimetha — the target of AEELA's appeal — is a lawyer from Texas. In his initial disclosure report, Osimetha disclosed his then-current employment with Axiom Law ("Axiom") and that Axiom had seconded him to work as the General Counsel of DPT Laboratories, Ltd. ("DPT").[3] During the two-year span of the arbitration proceedings, Osimetha updated his disclosure report twice. In September 2015, he disclosed that he had left both Axiom and DPT and joined Ciber, Inc. ("Ciber"), a publicly traded company, as its Chief Compliance Officer. Osimetha updated his

---

[2] According to FINRA Arbitrator's Guide, a disclosure report must include "any relationship, experience and background information that may affect — or even appear to affect — the arbitrator's ability to be impartial and the parties' belief that the arbitrator will be able to render a fair decision."

[3] Although AEELA argued in the district court that Axiom is a law firm, the parties are now in agreement that it is a legal staffing agency. We accept that characterization for purposes of this appeal.

- 5 -

disclosures again in May 2016 to reflect that had left Ciber and was once again working for Axiom. AEELA raised no objection to Osimetha's continuing to serve on the panel following these disclosures.

The arbitral proceedings culminated in a ten-day hearing during which the testimony of twelve witnesses and nearly 500 exhibits were introduced into evidence. In a unanimous decision issued on May 23, 2016, the panel denied all of AEELA's claims and issued a final arbitration award in UBS's favor.

The following month, UBS brought an action in the District Court of Puerto Rico to confirm the arbitration award. AEELA, in turn, filed a parallel lawsuit in state court to vacate the award, which UBS removed to federal court. The two actions were eventually consolidated. In October 2019, the district court denied AEELA's motion to vacate and granted UBS's motion to confirm the arbitration award.

As relevant to this appeal, AEELA argued in the district court that the arbitration award should be vacated pursuant to section 10(a)(2) of the Federal Arbitration Act ("FAA") because Osimetha had failed to disclose three professional relationships that his employers had with UBS. First, he did not disclose that Axiom had provided legal services to UBS. AEELA, however, provided no evidence on the timing, nature, or extent of those legal

services.[4]  Second, Osimetha did not report that a UBS affiliate had earned commissions for locating an insurance carrier for DPT's retirement plan.[5]  There was no evidence that Osimetha participated in that retirement plan.  Third, Osimetha failed to disclose that UBS maintained an indirect ownership interest in Ciber, which amounted to less than 0.5% of all Ciber shares.[6]

Relying on JCI Communications, Inc. v. IBEW, Local 103, 324 F.3d 42 (1st Cir. 2003), the district court held that, to establish "evident partiality," AEELA had to show that a reasonable person reviewing the evidence would have to conclude that Osimetha was partial to UBS.  The district court found that AEELA did not meet this burden because the connections between Osimetha and UBS were either too trivial or too attenuated to satisfy the JCI test. This appeal followed.

---

[4]  UBS has represented that it identified a single engagement that UBS divisions outside of North America had with Axiom, which concluded one year before the arbitration began, and which involved other Axiom-sourced lawyers (not Osimetha) handling certain swap agreements unconnected with this dispute.

[5] UBS has represented that its affiliate earned $15,521 in 2013 and $58,886 in 2014 in connection with that engagement.

[6] Specifically, UBS owned about 16.4 million shares of Invesco, Inc. ("Invesco"), making UBS one of over 500 institutional investors in that company.  In turn, Invesco owned 9.3% of Ciber shares.

## III. **Discussion**

Section 10(a)(2) of the FAA provides that a district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). The circuits have not reached a consensus on the meaning of "evident partiality." See, e.g., Montez v. Prudential Secs., Inc., 260 F.3d 980, 982-83 (8th Cir. 2001) (describing the circuit split in the wake of the Supreme Court's only decision on evident partiality, Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145 (1968)). In JCI, this court sided with the circuits that have interpreted evident partiality to require "more than just the appearance of possible bias," but less than bias in fact, see JCI, 324 F.3d at 51 (citing, among others, Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 626 (6th Cir. 2002); ANR Coal Co. v. Cogentrix of N.C., Inc., 173 F.3d 493, 500-01 (4th Cir. 1999); Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984)), explaining that evident partiality requires a showing that "a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration." Id. (quoting Nationwide, 278 F.3d at 626). Thus, this court implicitly rejected the approach of those circuits holding that a reasonable appearance of bias is sufficient to demonstrate evident partiality. See Schmitz v. Zilveti, 20 F.3d 1043, 1047 (9th Cir. 1994); Sunkist

- 8 -

Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 758-59 (11th Cir. 1993).

AEELA contends that JCI is limited to cases where the parties agreed to have partisan arbitrators and urges us to adopt the "reasonable appearance of bias" test for evident partiality challenges involving neutral arbitrators. This argument reads JCI too narrowly and is inconsistent with precedent since then.

It is true that the arbitrator selection process here is different than in JCI. That case involved a collective bargaining agreement wherein the parties agreed to arbitrate all labor disputes before a panel that would represent both "sides," consisting of three union representatives and three management representatives. See JCI, 324 F.3d at 45-46. After losing in arbitration, the employer sought vacatur on the ground that the management representatives were evidently partial because they were drawn from its business competitors. Id. at 51. This court held that the employer had waived the partiality claim because, despite being on notice that panel members could be selected from its competitors, it failed to raise the issue during the arbitration. Id. By contrast, here the parties agreed to select neutral arbitrators to decide their dispute, and AEELA's challenge rests on an arbitrator's failure to disclose relationships that allegedly raise questions about his ability to be impartial.

Notwithstanding these factual differences, we are not persuaded that the evident partiality standard adopted in JCI applies only to partisan arbitrators. For one, nothing in the discussion of the standard in JCI suggests that it should be cabined to the facts of that case. JCI did not expressly limit the standard based on the arbitrator selection process or the subject matter of the arbitration, but rather laid out the standard in general terms before focusing on the facts. See id. Moreover, in choosing to align with those circuits that require more than the appearance of possible bias to demonstrate evident partiality, the court cited with approval cases that involved both partisan and neutral arbitrators. See id. (citing ANR Coal, 173 F.3d at 500-01 (requiring more than the appearance of bias to establish evident partiality of a neutral arbitrator selected by the two arbitrators appointed by each party); Morelite, 748 F.2d at 84 (adopting the same standard where the parties had agreed to resolve their labor dispute before partisan arbitrators)). This suggests that the arbitrator selection process was not a factor in this court's adoption of that standard. Therefore, AEELA's attempt to limit JCI to challenges involving partisan arbitrators finds little support in that decision.

This court subsequently applied JCI to resolve a claim of arbitrator partiality in the context of a FINRA arbitration that, like here, involved a neutral arbitrator. See Ortiz-

- 10 -

Espinosa, 852 F.3d at 49. In that case, the plaintiffs argued that one of the arbitrators was partial to the defendants based on his statement during the arbitration, "if I were [defendants' counsel], I would have a sore throat from objection for irrelevancies." Id. In rejecting the claim, this court held that a "reasonable person would not 'have to conclude' from this exchange that the arbitrator was evidently partial to defendants." Id. (quoting JCI, 324 F.3d at 51). To be sure, that case did not concern arbitrator disclosure, but AEELA has not adequately explained why this difference is apposite. We are, therefore, left to conclude that Ortiz-Espinoza further dispels the notion that the interpretation of evident partiality adopted in JCI applies only to partisan arbitrators.

Moreover, AEELA's position that the meaning of evident partiality changes depending on the nature of the arbitrator selection process is problematic as a matter of statutory construction. In effect, it requires interpreting the same statutory phrase differently in different contexts. The Supreme Court has cautioned against "the dangerous principle that judges can give the same statutory text different meanings in different cases." Clark v. Martinez, 543 U.S. 371, 386 (2005) (referring to an interpretation of a specific subsection of the Immigration and Nationality Act that would give a phrase one meaning when applied to the first of three categories of aliens, and another meaning

- 11 -

when applied to the second of those categories); see United States v. Santos, 553 U.S. 507, 522 (2008) (explaining that Clark "held that the meaning of words in a statute cannot change with the statute's application"). We reject AEELA's invitation to give evident partiality a different meaning here than in JCI, which we are bound to follow as this circuit's law. See United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018) (delineating the law of the circuit doctrine).

Having resolved the question of the evident partiality standard, we turn to its application in this case. We agree with the district court that, based on the evidence AEELA submitted, a reasonable person would not "have to conclude" that Osimetha was partial to UBS. See JCI, 324 F.3d at 51. Where a party seeks to vacate an arbitral award based on an arbitrator's non-disclosure, several courts have articulated a list of non-exclusive factors that we find helpful in applying the evident partiality test:

> (1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitrator; and (4) the proximity in time between the relationship and the arbitration proceeding.

Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 74 (2d Cir. 2012) (quoting Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 530 (4th Cir. 2007)); accord ANR Coal, 173 F.3d at 500. The three professional

- 12 -

connections between Osimetha and UBS are too attenuated and too marginal to demonstrate his partiality.

With respect to the Axiom claim, AEELA's evidence shows that Osimetha was an attorney working for a legal staffing agency, which on one occasion, at some unspecified period, provided some legal services to UBS unconnected with this case. It is uncontested that Osimetha was not involved in the provision of those services. Without more, we cannot say that this connection is sufficiently direct or substantial to support a finding of evident partiality. Cf. Al-Harbi v. Citibank, N.A., 85 F.3d 680, 682-83 (D.C. Cir. 1996) (an arbitrator's failure to disclose his former law firm's representation of the prevailing party in unrelated matters deemed insufficient to establish evident partiality).

In its claim concerning DPT, AEELA faults Osimetha for failing to disclose a single engagement between his former employer's retirement plan and a UBS affiliate, which was limited to a search for an insurance carrier. This brief association is far from "a significant compromising connection to the parties." Positive Software Sols., Inc. v. New Century Mortg. Corp., 476 F.3d 278, 283 (5th Cir. 2007). Moreover, there is no evidence that Osimetha participated in that retirement plan, rendering the connection too remote to warrant vacating the arbitration award. The fact that this engagement occurred around the time the

arbitration began is of little significance in view of AEELA's lack of proof as to the other factors.

The same is true with regard to the Ciber claim. Despite its proximity in time to the arbitration, UBS's ownership interest in Osimetha's former employer is both indirect and nominal, representing less than 0.5% of Ciber's shares. Specifically, UBS was among more than 500 institutional investors holding shares in another publicly traded company, Invesco, and that company owned shares in Ciber. It strains credulity to argue that this attenuated connection is more than trivial. Cf. ANR Coal, 173 F.3d at 502 (finding no evident partiality where some members of the arbitrator's former law firm held a small ownership interest in the prevailing party, amounting to a total of 6% in equity).

AEELA has not carried its burden of proffering facts that would compel a reasonable person to conclude that Osimetha was partial to UBS. The three connections at issue, whether viewed singly or in combination, are far too indirect and tenuous to demonstrate evident partiality.[7] As a result, Osimetha's failure

---

[7] In fact, we doubt that these connections are sufficient to establish evident partiality even under the "reasonable appearance of bias" test that AEELA would have us apply. The cases upon which AEELA relies where courts have found a reasonable appearance of bias involve more direct and substantial relationships. See, e.g., New Regency Prods., Inc. v. Nippon Herald Films, Inc., 501 F.3d at 1101, 1107 (9th Cir. 2007) (arbitrator was senior executive of a film group actively negotiating to finance a film developed by the party that prevailed in arbitration); Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 51 F.3d 157, 159 (8th Cir. 1995)

- 14 -

to disclose them is not sufficient to warrant vacatur of the arbitration award.[8]

AEELA argues next that the district court erroneously disregarded FINRA's disclosure rule, which requires arbitrators to investigate and disclose "[a]ny existing or past financial, business, professional, family, social, or other relationships or circumstances" that "are likely to affect impartiality or might reasonably create an appearance of partiality or bias."  FINRA Rule 12405(a)(2).  If the district court had considered this rule, the argument goes, it would have been compelled to find evident partiality and to vacate the arbitration award.  We disagree.

---

(arbitrator was chief financial officer and compliance officer of an investment firm that did "a substantial amount of business" with the prevailing party during the arbitration); Schmitz, 20 F.3d at 1044 (arbitrator's law firm represented the prevailing party's parent company on at least nineteen occasions over a period of thirty-five years).

[8] To the extent AEELA argues that Osimetha's failure to investigate these potential conflicts itself establishes his evident partiality, the triviality of the connections is fatal to the argument.  See ANR Coal, 173 F.3d at 499 n.4 ("[I]f an arbitrator fails to investigate facts that come to light after the award, and those facts are not trivial, the aggrieved party may use this information to demonstrate evident partiality under 9 U.S.C. § 10(a)(2).  However, if those facts do not demonstrate statutory grounds for vacatur, a failure to investigate will not provide a court with grounds to vacate the award."); Al-Harbi, 85 F.3d at 683 ("[T]he fact that an arbitrator has not conducted an investigation sufficient to uncover the existence of facts marginally disclosable under the Commonwealth Coatings duty is not sufficient to warrant vacating an arbitration award for evident partiality.").

- 15 -

As an initial matter, it is doubtful that FINRA would disqualify an arbitrator based on a failure to disclose the sort of attenuated, insubstantial relationships at issue here. See supra note 7. But even if Osimetha ran afoul of the forum's disclosure rule, this is not a basis to vacate the arbitration award. While the forum's rules can help inform the evident partiality analysis, they do not have the force of law. See Commonwealth Coatings, 393 U.S. at 149 (Black, J.) (plurality opinion) (describing the AAA disclosure guidelines as "not controlling" but "highly significant" to the evident partiality analysis); New Regency Prods., Inc. v. Nippon Herald Films, Inc., 501 F.3d 1101, 1110 (9th Cir. 2007) (recognizing that AAA "sources are not binding authority and do not have the force of law," but suggesting they were relevant). As various circuits have explained in rejecting AEELA's argument, section 10(a)(2) of the FAA — the exclusive avenue for securing vacatur — articulates no ground for vacating an award based on an arbitrator's failure to investigate or disclose potential conflicts. See Scandinavian, 668 F.3d at 77 n.22; Positive Software, 476 F.3d at 285 n.5; Montez, 260 F.3d at 984; ANR Coal, 173 F.3d at 499; Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 680-81 (7th Cir. 1983). We likewise hold that a violation of the arbitral forum's disclosure rules, without more, does not justify vacatur.

We need not go further.[9]  The district court was faithful to this circuit's precedent establishing the evident partiality standard and correctly applied it to the meager evidence of partiality upon which AEELA relies.

## IV.  Conclusion

The district court's order granting the motion to confirm the arbitration award and denying the motion to vacate it is AFFIRMED.

---

[9] UBS argues that, even if AEELA could show that Osimetha was evidently partial, the arbitration award can be affirmed because the other two arbitrators unanimously voted to deny AEELA's claims. Because we affirm the district court's ruling that AEELA has not established evident partiality, we do not address this alternative argument.  For the same reason, we do not address the district court's alternative ruling that AEELA had waived some of its claims.