# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 00-3957

————————

Alex Montez, Jr.,      *

            *

     Appellant,      *

            *   Appeal from the United States

     v.      *   District Court for the

            *   Eastern District of Arkansas

Prudential Securities, Inc.,      *

            *

     Appellee.      *

————————

Submitted:  June 13, 2001

Filed:  July 31, 2001

————————

Before McMILLIAN and RICHARD S. ARNOLD, Circuit Judges,  and
      ROSENBAUM,[1] District Judge.

————————

McMILLIAN, Circuit Judge.

Alex Montez appeals from a final order entered in the United States District Court[2] for the Eastern District of Arkansas, denying his petition to vacate an arbitration award,  pursuant to 9 U.S.C. § 10(a)(2).  <u>Montez v. Prudential Securities, Inc.</u>,

———————————————

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

No. 4:97MC0022GH (E.D. Ark. Nov. 6, 2000) (memorandum and order) (hereinafter "slip op."). For reversal, Montez argues that the district court erred in holding that the arbitrator's undisclosed business and professional relationship with Prudential Securities, Inc. ("PSI") did not show "evident partiality" warranting vacatur of the arbitration award. For the reasons discussed below we affirm the order of the district court.

The factual background preceding Montez's filing for arbitration is as follows. In October 1994, Montez entered into an employment agreement with PSI, whereby Montez was hired by PSI as a senior vice-president and financial consultant. Pursuant to this employment agreement, PSI loaned Montez $270,000. Montez was to repay this loan by having PSI deduct $6,279, plus interest, from his net monthly commission check from March 1995 through September 1998. The employment agreement between PSI and Montez further provided that PSI would pay Montez compensation of $270,000 in monthly installments of $6,279 during this same period, plus additional monthly compensation of seven percent of the difference between the total amount of compensation and the amount of any monthly installments already paid. The employment agreement further provided that if Montez was terminated for cause, he would, in effect, be required to repay the $270,000, plus interest. Four months after Montez was hired, PSI terminated him, allegedly for a material misrepresentation on his employment application.

Pursuant to an arbitration provision in the employment agreement between Montez and PSI,[3] PSI, represented by David Sterling of the law firm of Baker & Botts, filed for arbitration with the National Association of Securities Dealers, Inc. ("NASD"),

_____

[3]Rule 10201 of the Manual of the National Association of Securities Dealers, Inc. ("NASD") - Code of Arbitration Procedures, provides that as a condition of employment with a NASD-member firm, employment disputes must be submitted to arbitration.

-2-

alleging it had cause to terminate Montez. Montez filed an answer and a counterclaim. In November 1996, a three-member arbitration panel, which included James Benson, issued a unanimous decision in PSI's favor and ordered Montez to repay PSI according to the employment agreement.

Subsequently, Montez learned that, while employed as general counsel for the investment banking firm of Underwood & Neihaus from 1977 to 1987, Benson had worked with Baker & Botts, and, while employed as general counsel for WNS, Inc. ("WNS"), from 1988 to 1991, Benson had engaged Baker & Botts as outside counsel. Work performed for WNS by Baker & Botts, while Benson was its general counsel, included sixty-eight attorneys and fees of $2,800,000 billed by the law firm. In January 1992, when WNS filed for voluntary protection from creditors, Baker & Botts was its largest unsecured creditor. It is uncontroverted that Benson did not disclose his past business and professional relationship with Baker & Botts to Montez prior to the arbitration. However, Benson asserted in a deposition, given subsequent to the initiation of the proceedings in district court, that he orally disclosed his relationship with Baker & Botts to NASD staff when he was contacted to serve on the panel in Montez's arbitration, although NASD staff had no recollection of such a disclosure. Also, Benson did disclose his prior relationship with Baker & Botts in January 1995 in another arbitration, the so-called "Berg matter," in which PSI was represented by Baker & Botts. In the Berg matter, where Benson was removed for cause, Benson allegedly discussed the pending case with Berg's counsel, with whom he had a personal and professional relationship.

Rule 10312 of the NASD code requires arbitrators to disclose "direct or indirect financial or personal interest in the outcome of the arbitration" and any such relationships "that are likely to affect impartiality or might reasonably create an appearance of partiality or bias." Rule 10312 of the NASD Manual- Code of Arbitration Procedures. NASD also asks arbitrators to make such disclosures in questionnaires, on the record at arbitration hearings, and at the time an award is given.

Montez sought to vacate the arbitration award in the district court pursuant to 9 U.S.C. § 10(a)(2), which provides that a federal court may vacate an arbitration award where there was "evident partiality" on the part of the arbitrator. The district court noted that courts have had difficulty resolving the issue of what constitutes "evident partiality," but that Justice Black, writing for at least four justices in Commonwealth Coating Corp. v. Continental Casualty Co., 393 U.S. 145, 149 (1968) (Commonwealth Coatings) explained that arbitrators must "'avoid even the appearance of bias' and must 'disclose to the parties any dealings that might create an impression of bias.'" Slip op. at 8 (citing Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 51 F.3d 157, 159 (8th Cir. 1995) (Olson)). The district court concluded that, under any of the standards articulated by courts in an attempt to interpret the meaning of "evident partiality," "the Court would not find evident partiality in this case." Id. at 12 We agree.

We review the district court's order declining to vacate the arbitration award under ordinary standards. Conclusions of law are reviewed de novo, and findings of fact are reviewed for clear error. Kiernan v. Piper Jaffray Cos., 137 F.3d 588, 591(8th Cir. 1998) (citations omitted).

As stated by this court in Olson, 51 F.3d at 158-59, under 9 U.S.C. § 10(a)(2), a district court may vacate an arbitration award if "there was evident partiality . . . in the arbitrators." In Olson, the arbitrator failed to disclose his substantial interest in a company which did business with a party to the arbitration. We concluded that such a relationship created "an impression of possible bias" which, under the majority opinion in Commonwealth Coatings, established "evident partiality." Id. at 159. Additionally, we noted that the concurring justices in Commonwealth Coatings added that an arbitrator "must disclose a business relationship if the arbitrator has a substantial interest in a firm that does more than trivial business with a party" and that this explanation of "evident partiality" presents an arguably narrower standard than that of the four justice majority. Id. We further noted in Olson that other courts have held "an arbitrator's failure to disclose business dealings between the arbitrator's employer

-4-

and a party to the arbitration could show evident partiality." Id. (citing Sanko S.S. Co. Ltd., v. Cook Indus., Inc., 495 F.2d 1260, 1261-65 (2d Cir. 1973). This court concluded that, based on the majority opinion and the concurrence in Commonwealth Coatings, the arbitrator had an obligation to disclose his business relationship and, therefore, the failure to do so established "evident partiality" under § 10(a)(2). See id. at 159.

The absence of a consensus on the meaning of "evident partiality" is evidenced by the approaches adopted by the different circuits. See, e.g., ANR Coal Co. v. Cogentrix of North Carolina, Inc., 173 F.3d 493, 500 (4th Cir. 1999) (ANR), (to establish evident partiality, the party seeking vacatur under 9 U.S.C. § 10(a)(2) has the burden to demonstrate "that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration") (citing Consolidation Coal Co. v. Local 1643, United Mine Workers, 48 F.3d 125, 128 (4th Cir. 1995)) cert. denied, 528 U.S. 877 (1999); Ginnelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc., 146 F.3d 1309, 1312 (11th Cir. 1998) (evident partiality requires that an actual conflict exist or the "arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists"); Schmitz v. Zilveti, 20 F.3d 1043, 1046 (9th Cir. 1994) (applying a "reasonable impression of partiality" standard in finding evident partiality where arbitrator failed to disclose his law firm had represented parent company of a party); Morelite Const. Corp. v. New York City Dist. Council, 748 F.2d 79, 84 (2d Cir. 1984) (requiring more than an "appearance of bias" and holding that a "reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration"; evident partiality found under this standard where there was father-son relationship between arbitrator and an officer of an international union of which local union which was a party to the arbitration was a member); Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 679 (7th Cir. 1983) (evident partiality not found where arbitrator once worked under a party's principal stockholder at a different company).

In the matter before us, there is no indication that Benson had any financial interest related to Baker & Botts, PSI, or WNS.   Benson was neither a major shareholder or owner of WNS, nor did he have anything  to gain from fostering a relationship with either Baker & Botts or PSI.  Moreover, Benson's former employer, WNS, did not have business dealings with a party to the arbitration.  Thus, the circumstances under which this court found vacatur appropriate in <u>Olson</u> are distinguishable from this matter.  Most significantly, the relationship between Benson and Baker & Botts ended five years prior to the arbitration.  In addition, unlike the <u>Berg</u> matter,  Benson did not actually discuss the pending case with a party's counsel.  Even under NASD Rule 10312 Benson arguably did not have an obligation to disclose his prior relationship with Baker & Botts because this rule refers to relationships which suggest possible bias; Benson's relationship with this law firm did not necessarily suggest possible bias.  Moreover, a federal court cannot vacate an arbitration award based on a failure to disclose merely because an arbitrator failed to comply with NASD rules.  Rather, as stated above, 9 U.S.C. § 10(a)(2) establishes the standard for vacatur of an arbitration award by a federal court, not the NASD rules.  <u>See</u> <u>Commonwealth Coatings</u>, 393 U.S. at 149 (Rules of American Arbitration Association are significant but not controlling); <u>ANR</u>, 173 F.3d at 499 (same).  Thus, even if Benson's failure to disclose had violated NASD Rule 10312, "that would not by itself, require or even permit a court to nullify an arbitration award." <u>Id.</u>  We, therefore,  hold that the district court did not err in holding that, under any of the standards articulated by the federal courts, "evident partiality" cannot be found under the present circumstances.

For the reasons stated above, we affirm the order of the district court denying vacatur of the arbitration award pursuant to 9 U.S.C. § 10(a)(2).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.