# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1708
No. 13-1795

_____

Richard L. Brown

*Plaintiff - Appellee - Cross-Appellant*

v.

Susan Brown-Thill

*Defendant - Appellant - Cross-Appellee*

_____

No. 13-1710
No. 13-1797

_____

Susan Brown-Thill

*Plaintiff - Appellant - Cross-Appellee*

v.

Richard L. Brown

*Defendant - Appellee - Cross-Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 13, 2014
Filed: August 11, 2014

_____

Before RILEY, Chief Judge, LOKEN and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

Richard L. Brown ("Brown") and Susan Brown-Thill ("Brown-Thill"), the children of Eugene D. Brown and Saurine L. Brown, became the sole co-trustees of the complex Eugene D. Brown Trust ("EDB Trust") after the death of their mother, the surviving spouse under that Trust. Unable to resolve many conflicts about managing the EDB Trust and other family trusts and partnerships, in March 2010 Brown and Brown-Thill signed an Arbitration Agreement for resolving a broad range of disputes. The Agreement provided "that the first matter to be taken up by the arbitrator will be all issues associated with the documentation for and means of payment of the estate taxes due on the estate of Saurine L. Brown." These consolidated appeals involve two of the many awards that followed that initial arbitration -- a March 14, 2011, award that authorized distributions from family-owned limited partnerships to family trusts, and a December 12, 2011, award that (i) declared invalid Brown's attempt to resign as co-trustee and name his successor, and (ii) removed Brown as co-trustee, applying the Uniform Trust Code's standards for the statutory removal of a trustee as adopted in Missouri, the situs of the controversy, and Florida, the situs of the EDB Trust. The district court[1] denied Brown's attempt to vacate both awards and Brown-Thill's request for a contractual award of attorneys' fees in both lawsuits. Brown and Brown-Thill cross-appeal these rulings. With one modification that does not affect the status of EDB Trust administration following the awards, we affirm.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, presided in both cases.

-2-

# I. The Underlying Impasse.

Eugene and Saurine Brown created several entities to hold and manage Brown family assets, including two trusts, the EDB Trust and the Saurine L. Brown Trust ("SLB Trust"); a limited liability corporation, Brown Bear LLC ("Brown Bear"); and two family limited partnerships, 7219 Metcalf Partnership, L.P. ("FLP I") and 7219 Metcalf Partnership II, L.P. ("FLP II"). At the times in question, Brown and Brown-Thill were the co-trustees of the EDB Trust. Attorney James Cooper was the sole trustee of the SLB Trust. Brown Bear was the general partner of FLP I and FLP II. The EDB Trust and the SLB Trust each owned 50% of Brown Bear. Thus, for Brown Bear to cause FLP I or FLP II to take an action such as distributing income to other family entities, Brown, Brown-Thill, and Cooper must all agree.

In early 2011, due to the decision-making impasse between Brown and Brown-Thill, FLP I and FLP II had issued no partnership distributions since 2008. On February 22, with tax deadlines approaching, Cooper emailed a partnership distribution proposal ("Trust Funding Proposal") to counsel for Brown and Brown-Thill, and to the arbitrator specifically named in an April 6, 2010, amendment to the Arbitration Agreement, Richard McLeod. The email stated, "The SLB Trust approves this plan, and we need the approval of the EDB Trust, which may or may not require arbitration. . . . If that approval is not given by the end of the day on March 3rd, I will schedule a Partnership meeting for FLP I, FLP II and Brown Bear, LLC for a vote on the proposal." Brown did not agree to the proposal and the issue was submitted to arbitrator McLeod, resulting in the March 14 award at issue.

While the siblings litigated Brown's application to vacate the March 14 award, they continued to disagree about management of the EDB Trust. Before Brown-Thill submitted a planned proposal to arbitrate whether Brown should be removed as co-trustee, Brown signed a notice resigning "[e]ffective upon the appointment of John L. Rubenstein as my Successor Co-Trustee," and a separate document appointing

-3-

Rubenstein as successor co-trustee, which Rubenstein accepted. Brown-Thill took the position that Brown could not unilaterally appoint a successor co-trustee, but that Rubenstein's appointment would be effective if she agreed to it. After discussions and actions suggesting that Brown-Thill would agree to Rubenstein's appointment, she decided she would not approve Rubenstein and advised Brown she would submit to arbitration (i) whether Brown's conditional resignation and unilateral appointment of Rubenstein were ineffective, (ii) whether Brown should be removed as co-trustee, and (iii) whether an employee of FLP I should be given an employment contract that Brown opposed. The dispute was submitted to arbitrator McLeod, resulting in the December 12, 2011, award at issue.

## II. Brown's Challenges to the Arbitration Awards.

The general provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, govern our judicial review of the arbitration awards at issue. Because Brown challenges the awards on nearly every conceivable basis, it is important at the outset to reiterate the deferential standards that govern our review.

First, an arbitrator's authority is contractual. Therefore, the threshold question whether the parties to the Arbitration Agreement agreed to arbitrate a particular dispute -- the dispute's "substantive arbitrability" -- is a question for the court (unless the parties agreed that the arbitrator should decide arbitrability). First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-44 (1995). Here, Brown seeks this level of *de novo* review by characterizing some of his arguments as issues of substantive arbitrability. We reject this contention based upon the breadth of the Arbitration Agreement, which provided that Brown and Brown-Thill agreed:

> All existing and future disputes and controversies between the parties, whether in their individual capacities, their capacities as co-beneficiaries and/or co-trustees of [the EDB and SLB trusts], or in their

-4-

capacities as co-owners, partners, or members of any business entity, including [Brown Bear, FLP I, and FLP II] . . . which arise out of or relate to the administration and investment of the trusts, partnerships and assets of the [EDB and SLB] estates, the payment of estate taxes of such estates, or the division of assets of such estates, shall be submitted to binding arbitration pursuant to the following procedures.

Every issue submitted to and resolved by the arbitrator in his March 14 and December 12 awards fell within this comprehensive agreement to arbitrate. Thus, the many issues raised in Brown's two appeals are *not* issues of substantive arbitrability.

Second, judicial review of the merits of an arbitrator's award is conducted under an extremely deferential standard of review. Section 9 of the FAA provides that a reviewing court "must" confirm an award unless it is "vacated, modified, or corrected as prescribed in sections 10 and 11." Therefore, the Supreme Court held, resolving a conflict in the circuits, "§§ 10 and 11 provide exclusive regimes for the review provided by the statute." Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 590 (2008). Applying this deferential standard, "[c]ourts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract." Medicine Shoppe Intern., Inc. v. Turner Inv., Inc., 614 F.3d 485, 488 (8th Cir. 2010).

## A. The March 14 Award.

The March 14 award ordered Brown "as co-trustee of the EDB [Trust to] timely execute all documentation necessary to effectuate both of the proposed distributions" from FLP I and FLP II. Brown challenges this award on several grounds.

1. Brown first argues that the arbitrator exceeded his powers by deciding a dispute that was not submitted in accordance with procedures mandated by the Arbitration Agreement. The Agreement as amended in April 2010 provided:

-5-

A. Either party may give email notice to the other that they deem an issue to be a subject for arbitration, which notice shall specify the issue and the proposed resolution. If the parties fail to resolve such issue within seven calendar days of such notice, the issue will be submitted to an arbitrator for mediation, and, if the mediation is unsuccessful, for binding arbitration.

\* \* \* \* \*

D. The arbitrator shall establish procedures to be followed for each arbitration. If either party fails to follow or abide by the arbitrator's required procedures within the time frames set out by the arbitrator, the arbitrator shall be authorized to resolve the issue without the full participation of the non-abiding party and both parties shall be bound by the arbitrator's decision.

Brown asserts that Cooper was a non-party who could not submit a dispute to arbitration; that Brown-Thill never specified the issue and her proposed resolution; that the dispute was not submitted to the arbitrator within seven days; and that the arbitrator conducted no mediation and failed to establish procedures for the arbitration. As these contractual "prerequisites" were not followed, he argues that *the dispute was not arbitrable*.

The district court properly characterized these contentions as raising issues of "procedural arbitrability." When raised in a lawsuit to enjoin a demand for arbitration, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (emphasis in original, quotation omitted); see Pro Tech Indus., Inc. v. URS Corp, 377 F.3d 868, 871-72 (8th Cir. 2004). Thus, it was for arbitrator McLeod to decide in the first instance procedural questions such as whether the dispute was properly submitted, whether mediation was required, and whether specific arbitration procedures needed to be established for parties who had previously arbitrated numerous disputes.

-6-

When an arbitration has been completed and a court is asked to vacate the award because the arbitrator was guilty of or permitted the prevailing party to commit procedural irregularities, "we must . . . accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 748-49 (8th Cir.), cert. denied, 476 U.S. 1141 (1986), followed in El Dorado Sch. Dist. No. 15 v. Continental Cas. Co., 247 F.3d 843, 846-47 (8th Cir. 2001). Bearing in mind the Supreme Court's recent teaching in Hall Street Associates, we conclude that an award may not be vacated on this ground unless a procedural irregularity resulted in non-compliance with the mandates of FAA §§ 10 and 11.

2. Proceeding on that alternative basis, Brown also argues that the arbitrator's procedural errors violated FAA §§ 10(a)(2), (3), and (4), which provide that an award may be vacated:

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of a party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

a. § 10(a)(2). Brown argues that the arbitrator's *ex parte* contacts with Cooper and Brown-Thill before the arbitration hearing established his evident partiality and require vacating the March 14 award under 9 U.S.C. § 10(a)(2). This contention is without merit. First, Brown makes no showing that he raised this contention to the

arbitrator, meaning it was waived.  Delta Mine Holding Co. v. AFC Coal Props., Inc., 280 F.3d 815, 821 (8th Cir. 2001), cert. denied, 537 U.S. 817 (2002).

Second, on the merits, the district court concluded that Brown made no showing "that McLeod did anything improper."  We agree.  Because arbitration awards are favored, a party seeking to vacate on this ground has "a high burden of demonstrating objective facts inconsistent with impartiality."  Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 105 (2d Cir. 2013) (quotation omitted); see M&A Elec. Power Coop. v. Local Union No. 702, IBEW, 977 F.2d 1235, 1238 (8th Cir. 1992) (party seeking to vacate "must demonstrate that the conduct influenced the outcome of the arbitration").  Brown has not come close to meeting this burden.  Arbitrator McLeod was hand-picked by the parties to the Arbitration Agreement, including Brown, and had mediated and arbitrated many earlier disputes. In these circumstances, prior contacts -- *ex parte* and otherwise, disclosed and undisclosed -- were inevitable, requiring a specific showing that particular contacts influenced the arbitrator's resolution of *this* dispute.  See Dow Corning Corp. v. Safety Nat'l Cas. Corp., 335 F.3d 742, 750-52 (8th Cir. 2003), cert. denied, 540 U.S. 1219 (2004).  Brown made no such showing.

b. § 10(a)(3).  Brown argues that the arbitrator was guilty of misconduct or misbehavior warranting vacating the award because he "did not conduct *any* hearing or otherwise provide the parties with an opportunity to present evidence and argument," and because he did not notify Brown that he "would convert the telephonic partnership meeting into an arbitration hearing." A party seeking to vacate an award for misconduct under § 10(a)(3) must show that he was "deprived of a fair hearing."  Grahams Serv. Inc. v. Teamsters Local 975, 700 F.2d 420, 422 (8th Cir. 1982).  The district court found "no reason to infer that [the arbitrator] engaged in any misconduct or misbehavior" or deprived Brown of a fair opportunity to present evidence and argument in support of his position.  We agree.

-8-

The arbitrator was faced with a procedurally unusual dispute that presented serious time pressures -- whether, at a scheduled meeting of the family partnerships, the EDB Trust should vote for or against a proposal to distribute funds urgently needed to meet obligations of other family entities. The arbitrator held a telephonic hearing on March 10. Prior to that hearing, Brown, Brown-Thill, Cooper, and the arbitrator exchanged several emails concerning whether the EDB Trust would vote in favor of Cooper's Trust Funding Proposal. Brown-Thill expressed her support for the proposal noting that, if Brown did not agree, "[t]he dispute would be submitted to [the arbitrator] for his resolution." Brown's attorney conveyed Brown's objection on March 3. That day, Cooper sent a Notice of Partnership Meeting on March 10, copying arbitrator McLeod "so that he is aware of what is happening and will be prepared in the event a dispute arises *between the Trustees of the EDB Trust.*" (emphasis in original). Before the March 10 hearing, Brown had notice that the arbitrator would attend the partnership meeting and would enter an award resolving any dispute between Brown and Brown-Thill over the Trust Funding Proposal. Brown's attorney objected that "an award based on . . . a phone conversation . . . does not comply with the arbitration agreement."

The telephonic hearing was conducted during the partnership meeting. Brown-Thill and Cooper voted in favor of the Trust Funding Proposal. Brown did not attend but, through counsel, voted against and "objected to the timing of the meeting and the meeting process." After the meeting, Brown reiterated his substantive objections to the arbitrator by email, claiming that he lacked necessary information and was "given neither the opportunity to vote nor the opportunity to present a case" because he had not been available to attend on March 10. Brown's attorney submitted further written substantive objections. The arbitrator issued his award on March 14. Particularly in light of the need to promptly resolve this long-simmering dispute, we cannot conclude that the arbitrator denied Brown and his counsel fair opportunity to present evidence and argument or deprived Brown of a fair hearing.

c. § 10(a)(4). Brown argues that the March 14 award should be vacated under § 10(a)(4) because the arbitrator "exceeded his powers" by making an award that "manifestly disregard[ed]" the unambiguous procedural requirements of the Arbitration Agreement. After closely examining the evidence in the record, the district court concluded that the arbitrator adequately followed the relatively informal procedures set forth in the Arbitration Agreement. Again, we agree.

For Brown to prevail on this claim, "[i]t is not enough to show that the arbitrator committed an error -- or even a serious error. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013) (quotations and citations omitted). This review must be particularly deferential when the arbitrator is accused of violating the procedural limits of his authority. "[A]rbitrators are the experts about the meaning of their own rules, and are comparatively better able to interpret and to apply them than courts." Pro Tech, 377 F.3d at 872. Here, Brown had adequate notice of the proceeding and the Trust Funding Proposal, and the arbitrator made himself available for mediation and gave Brown an adequate opportunity to present and argue his position. It was for the arbitrator to determine whether the Arbitration Agreement's procedural guidelines *required* more in resolving this procedurally unusual dispute.[2]

3. Turning to the substantive merits of the March 14 award, Brown argues that it should be vacated under § 10(a)(4) because the arbitrator exceeded his powers when he manifestly disregarded the EDB Trust Agreement by acting as if he were a trustee in voting to approve the Trust Funding Proposal, substituting his own

---

[2]As Brown "raised these issues to the arbitrator," we may not vacate the award simply because the arbitrator did not make an express finding that the Arbitration Agreement's procedures were satisfied. El Dorado, 247 F.3d at 847.

discretionary judgment for the judgment of co-trustee Brown that was required by the Trust Agreement. This strange argument is unsound for at least three reasons.

First, the Arbitration Agreement applied to "[a]ll existing and future disputes and controversies between the parties . . . in their . . . capacities as . . . co-trustees of [the EDB Trust] which arise out of or relate to the administration and investment of the trusts, partnerships and assets of the [EDB and SLB] estates." Thus, if sound, this argument would compel the conclusion that the Agreement was, to a very large extent, void *ab initio*. Yet Brown willingly entered into the Agreement and participated without objection in numerous prior arbitrations, most of which no doubt entailed disputes between Brown and Brown-Thill acting in their capacities as co-trustees. Second, Brown points to no provision in the EDB Trust Agreement reflecting the settlor's intent to prohibit this type of sensible co-trustee dispute resolution. Third, the contention's factual premise is wrong. Arbitrator McLeod did not exercise *his* judgment as a non-appointed co-trustee. Rather, he decided which of the conflicting judgments of the appointed co-trustees should be given effect. Brown did not argue to the arbitrator that Brown-Thill's vote in favor of the Trust Funding Proposal violated *her* fiduciary duties as co-trustee. State law might require an arbitrator to consider that argument. Nor did Brown argue that the Trust Funding Proposal conflicted with terms of the Trust Agreement. Thus, in resolving this dispute, the arbitrator acted squarely within the authority granted by the Arbitration Agreement, not as a trustee.

4. Finally, Brown argues the arbitrator exceeded his powers by signing documents implementing the Trust Funding Proposal, post-arbitration, when Brown failed to comply with the order that he timely do so. This action is not grounds for vacating the award under FAA § 10. Nor was this action the type of improper post-arbitration actions falling within the *"functus officio"* doctrine. See Legion Ins. Co. v. VCW, Inc., 198 F.3d 718 (8th Cir. 1999). Moreover, it would appear that the arbitrator's signature on documents was not necessary to carry out the award; the

-11-

Arbitration Agreement provided, "The arbitrator's decision shall have the effect of a joint instruction and/or authorization from Richard Lotman Brown and Susan L. Brown-Thill and may be presented as such to third-parties." As the issue does not affect the award's validity, we decline to consider it further.

## B. The December 12 Award.

After Brown-Thill decided not to approve Rubenstein as successor co-trustee, she notified Brown that an arbitration hearing would be held on December 5, 2011, to determine whether Brown's conditional resignation and unilateral appointment were ineffective, and whether Brown should be removed as co-trustee. Brown made several motions seeking to prevent this arbitration, which arbitrator McLeod denied. Brown also executed an unconditional notice of intent to resign as trustee on December 2, effective thirty days later. The arbitration proceeded as scheduled on December 5. Brown-Thill presented extensive testimony and exhibits. Brown declined to attend or to present evidence but submitted his own proposed award.

The arbitrator determined that, under the EDB Trust Agreement, (i) Brown could not unilaterally appoint a successor co-trustee while he and Brown-Thill continued to act as co-trustees; (ii) Brown-Thill did not consent to the appointment of Rubenstein; and (iii) Brown's conditional resignation was ineffective because he did not give thirty days notice, as the Trust Agreement required, and because it was conditioned upon Rubenstein's appointment, which was ineffective. Turning to Brown-Thill's request to remove Brown, the arbitrator found no provision in the Trust Agreement permitting one co-trustee to remove the other. However, both Florida and Missouri statutes provide that the court may remove a trustee if "lack of cooperation among co-trustees substantially impairs the administration of the trust," or "because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively." Mo. Rev. Stat. § 456.7-706(2), (3); see Fla. Stat. Ann. § 736.0706(2)(b), (c). Invoking these statutes, the arbitrator granted Brown-

-12-

Thill's petition to remove Brown, finding that he had "failed to adequately cooperate with Brown-Thill to ensure the effective administration of the EDB Trusts on numerous occasions," causing an "impasse" that was likely to continue in the future.

1. On appeal, Brown first argues *the district court* erred in interpreting the EDB Trust Agreement to preclude his unilateral appointment of Rubenstein as co-trustee, and to render his October 10 conditional resignation ineffective. The argument is misfocused. It was not the district court's function to interpret the Trust Agreement. The Arbitration Agreement authorized *the arbitrator* to resolve any dispute submitted by Brown or Brown-Thill that arose out of or related to the administration of the EDB Trust. The FAA mandates that an arbitrator's award not be vacated so long as the arbitrator was "even arguably construing or applying the contract" he was commissioned to interpret. Oxford Health Plans, 133 S. Ct. at 2068; see United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987). After carefully considering the Trust Agreement provisions relating to trustee resignation and the appointment of successors, arbitrator McLeod concluded that Brown's initial resignation was ineffective both procedurally -- for lack of the required notice -- and substantively -- because conditioned on Brown's unauthorized unilateral appointment of a successor. As these conclusions drew their essence from the underlying Trust Agreement, the award may not be vacated under FAA § 10. Likewise, given our deferential review of the arbitrator's award, Brown's contentions that Brown-Thill's acceptance of Rubenstein resolved the dispute before it was submitted to arbitration, and that the arbitrator never considered Brown's December 2 resignation, are not grounds for vacating the award under FAA § 10.

2. Brown further argues the district court erred in rejecting his contention that the method for removing a trustee contained in the EDB Trust Agreement reflected the settlor's intent to preclude the arbitrator's statutory removal of a co-trustee. In a section titled, "Removal of Trustee," the Trust Agreement authorized a majority of the income beneficiaries to remove a trustee and to designate a successor trustee by

-13-

written notice, "without hearing or order by any court." Though the Agreement did not explicitly provide that this provision was intended to be the exclusive way to remove a trustee, Brown suggests that "[p]resumably the settlor never intended that his two-income beneficiary children be engaged in court or arbitration proceedings to remove one another for alleged failure to cooperate or unfitness."

For centuries, Anglo-American courts of equity have exercised jurisdiction to remove trustees when necessary for effective trust administration or to protect the interests of trust beneficiaries. See Bogert, Bogert, & Hess, The Law of Trusts and Trustees § 519. Like the district court, we doubt that state courts would construe a trust agreement as precluding judicial review of whether a trustee was fulfilling his fiduciary duties. See, e.g., Mo. Rev. Stat. §§ 456.2-201, 456.2-202.3(9); 2 Rest. (Third) of Trusts § 29 cmt. m (2003) ("a trust provision may not be enforced if to do so would undermine proper administration of the trust"). The only non-controlling case Brown cites to support his assertion that the statutory removal provisions on which the arbitrator relied are "non-mandatory" is so distinguishable that it requires no discussion. Bellamy v. Langfitt, 86 So.3d 1170, 1173-75 (Fla. App. 2012). Moreover, *if* state law would permit a trust agreement to foreclose judicial supervision of its fiduciaries, such an intent would need to be explicitly stated. Cf. Davis v. U.S. Bank N.A., 243 S.W.3d 425, 431 (Mo. App. 2007). Therefore, the arbitrator's interpretation of the Trust Agreement's removal provision is not a ground for vacating the award.

3. Brown also argues that arbitrator McLeod's decision to invoke the statutory removal provisions "exceeded his powers" under Florida and Missouri law, requiring that the award be vacated under FAA § 10(a)(4). This contention raises a more interesting and difficult issue. The Florida and Missouri Trust Codes permit "interested persons" to "enter into a binding nonjudicial settlement agreement with respect to any matter involving a trust." Fla. Stat. Ann. § 736.011(2); Mo. Rev. Stat. § 456.1-111.2. Brown argues that his children as "qualified beneficiaries" and

-14-

Rubenstein as successor co-trustee were interested persons "for purposes of consensual trustee removal." Therefore, the arbitrator exceeded his powers by resolving this dispute in a binding nonjudicial settlement agreement in which fewer than all interested persons participated.

Both Florida and Missouri statutes provide, "The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on the court's own initiative." Fla. Stat. Ann. § 736.0706; see Mo. Rev. Stat. § 456.7-706. After reviewing the Florida and Missouri cases Brown cited in support of this theory,[3] the district court concluded that, while as a general rule "all beneficiaries are persons needed for just adjudication of an action to remove trustees and require an accounting or restoration of trust assets," Tick, 787 F.2d at 1494, these cases do not establish that beneficiaries must be parties in a trustee removal action that does not involve an accounting or otherwise impact trust assets. The district court determined that any objection to Brown's removal by his minor children, had they been joined, "would have been similar to Brown's," and that Rubenstein was not a necessary party because Brown's attempt to appoint him was ineffective.

We take a somewhat different view of this issue. This trustee removal dispute was substantively arbitrable under the Arbitration Agreement. The purpose of statutes authorizing a "binding nonjudicial settlement agreement" is to "facilitate[] the making of such agreements by giving them the same effect as if approved by the court," not to preclude other types of agreements. Unif. Trust Code § 111 cmt., 7C U.L.A. 450-51 (2006). Thus, arbitrator McLeod did not exceed his powers simply by taking up the removal issue. However, the award was not based on McLeod's

---

[3]Tick v. Cohen, 787 F.2d 1490, 1494 (11th Cir. 1986) (per curiam); Grilley v. Marion Mortg. Co., 182 So. 297, 300 (Fla. 1937); Crescenze v. Bothe, 4 So.3d 31, 32-33 (Fla. App. 2009); Riggs v. Moise, 128 S.W.2d 632, 636 (Mo. banc 1939); Davis, 243 S.W.3d at 429-30; Weldon Revocable Trust v. Weldon, 231 S.W.3d 158, 168-70 (Mo. App. 2007); Roth v. Lehmann, 741 S.W.2d 860, 862-63 (Mo. App. 1987).

interpretation of a contractual removal provision. Lacking a contractual mandate, he reached outside the Trust Agreement and the Arbitration Agreement and based removal on grounds that are, by statute, *exclusively* judicial. In so doing, he exercised a judicial power that "calls for the exercise of sound judicial discretion" and "should be used sparingly." Weldon Revocable Trust, 231 S.W.3d at 178. As the district court recognized and the cases cited in footnote 3 demonstrate, we doubt that a court would have ordered Brown removed at the request of Brown-Thill unless all trust beneficiaries were made parties to the action. See Bogert, Bogert, & Hess at § 522.

"If an arbitral decision is based solely upon the arbitrator's view of the requirements of enacted legislation, rather than on an interpretation of the [underlying] agreement, the arbitrator has exceeded the scope of the submission, and the award will not be enforced." Alexander v. Gardner-Denver Co., 415 U.S. 36, 53 (1974) (quotation omitted); see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1767-68 (2010). That is not an easy standard to apply in this situation. Having studied the few relevant authorities and the extensive record on appeal, we conclude that (i) Brown-Thill properly submitted the removal issue under the Arbitration Agreement; (ii) arbitrator McLeod then had power to construe and apply the Trust Agreement's removal provision and to make findings regarding the statutory standards for removal which Brown-Thill could present in a judicial proceeding under Fla. Stat. Ann. § 736.0706 and Mo. Rev. Stat. § 456.7-706; but (iii) the arbitrator exceeded his powers by exercising the exclusively judicial function of removing Brown on *statutory* grounds. However, this decision is of no practical importance because Brown's unconditional resignation on December 2, which was not effective when the arbitration award was made, is now effective. Therefore, Brown is not now, and has not been since the December 12 award, a co-trustee of the EDB Trust.

4. Finally, Brown raises the same FAA § 10(a)(2) challenge to the December 12 award as he did in challenging the March 14 award, based on the same evidence

of evident partiality, the arbitrator's alleged *ex parte* contacts with Brown-Thill and Cooper. We reject this contention for the reasons stated above.

### III. Brown-Thill's Appeal of the Denial of Attorneys' Fees

Brown-Thill appeals the district court's denial of her request for attorneys' fees and costs in defending against Brown's actions to vacate the awards. Missouri subscribes to the "American Rule" -- parties bear their own attorneys' fees unless fee shifting is authorized by contract or statute. See generally Trimble v. Pracna, 167 S.W.3d 706, 714 (Mo. banc 2005). Brown-Thill argues she is entitled to fee awards under the unambiguous terms of the Arbitration Agreement, which provided in relevant part:

> C. . . . The arbitrator's decision shall be final and binding on the parties. Judgment may be entered upon any award rendered by the arbitrator in accordance with applicable law in any court of competent jurisdiction.
>
> *   *   *   *   *
>
> E. . . . If either party pursues any claim, dispute or controversy against the other in a proceeding other than the arbitration provided herein, the responding party shall be entitled to dismissal or injunctive relief regarding such action and recovery of all costs, losses and attorneys' fees relating to such action.

The district court concluded that the "judgment" referred to in paragraph C. of the Arbitration Agreement "would include motions to confirm or vacate an arbitration award," and therefore those motions are not "other" proceedings for which attorneys' fees may be awarded under paragraph E. Brown-Thill concedes she is not entitled to attorneys' fees incurred in seeking a judgment confirming the December 12 award, but argues she is contractually entitled to recover her attorneys' fees in responding to Brown's Application To Vacate the March 14 award and his Motion To Vacate the

-17-

December 12 award. She argues that the Arbitration Agreement did not "reference[]" the parties' right to challenge an arbitration award." Rather, its intent was to allow an award to be quickly and efficiently confirmed "without the need to relitigate the same arbitrable dispute."

Brown-Thill's attempt to segregate proceedings to confirm and to vacate an award ignores the Supreme Court's interpretation of FAA §§ 9-11 as "mechanisms for enforcing arbitration awards," with § 9 expressly providing that an award must be confirmed "unless" it is vacated, modified, or corrected under §§ 10-11. Hall Street Assoc., 552 U.S. at 582. The enforceability of an award is an essential part of arbitration as authorized by the FAA. See FAA § 2. Thus, if a contract does not authorize an award of attorneys' fees incurred in the arbitration itself, like the Arbitration Agreement in this case, it also does not authorize an award of attorneys' fees incurred in enforcing *or defending* the award in proceedings under FAA §§ 9-11. We agree with the district court that the relevant provisions of the Arbitration Agreement were "clearly meant to compel the parties to arbitrate their disputes, not to prevent them from seeking to vacate or confirm an award in a court." As confirmation or vacation of an award is part of the arbitration process, Brown-Thill is not entitled to recover attorneys' fees.

The judgments of the district court are affirmed, with the modification noted in Part II.B.3 of this opinion. Brown's motion to take judicial notice is denied.

_____