# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-2405

_____

Ann Eleanor Ploetz, as Trustee for the Laudine L. Ploetz, 1985 Trust

*Plaintiff - Appellant*

v.

Morgan Stanley Smith Barney LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 12, 2018
Filed: July 2, 2018

_____

Before WOLLMAN, ARNOLD, and STRAS, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Ann Eleanor Ploetz, the trustee for the Laudine L. Ploetz, 1985 Trust, brought a claim against Morgan Stanley Smith Barney LLC, with whom the Trust held an account, alleging that Morgan Stanley had transferred funds from the account without authorization. The parties submitted the claim to the Financial Industry Regulatory Authority for arbitration "in accordance with the FINRA By-Laws, Rules, and Code

of Arbitration Procedure." The arbitration panel assigned to the claim originally consisted of three public arbitrators, including chairperson Brett Olander. But six days before the arbitration hearing was set to begin, Olander discovered he had a scheduling conflict. Morgan Stanley asked to postpone the hearing until Olander was available again, but Ploetz did not want a delay, so the parties used FINRA's "short list" procedure to pick a new chair. Under that procedure, FINRA sent each party a random list of three public arbitrators and also the arbitrators' disclosure reports. Each party could strike one name from their list and rank the remaining names in order of preference. FINRA then combined the parties' lists and appointed the highest-ranking arbitrator to be Olander's replacement: The new chairperson was Barry Goldman.

Goldman's disclosure report stated he was currently serving as an arbitrator in two other cases that had "Morgan Stanley" as a party. His report also revealed he had served as an arbitrator in eight closed cases in which a member of the Morgan Stanley family (*e.g.*, Morgan Stanley & Co. or Morgan Stanley DW, Inc.) or the Smith Barney family (*e.g.*, Salomon Smith Barney, Inc., or Smith Barney Inc.) had been a party. In the case most recently closed, Goldman, serving as sole arbitrator, had dismissed as untimely the claims against a Morgan Stanley affiliate. *See McCormick v. Morgan Stanley*, 2016 FINRA Arb. LEXIS 655 (2016). But Goldman's report did not disclose he had once served as a mediator in another case involving Morgan Stanley Smith Barney LLC. The mediation was unsuccessful, and an arbitration panel (on which Goldman did not sit) ultimately found that Morgan Stanley owed the claimant $75,000 in damages. *See Arthur E. Strunk Revocable Trust v. Morgan Stanley Smith Barney LLC*, 2014 FINRA Arb. LEXIS 980 (2014).

The arbitration panel in this case, with Goldman as chairperson, held hearings in Minneapolis, Minnesota, on two consecutive days in January, 2017. Within one week of the last hearing, the panel unanimously denied Ploetz's claim. The following month, however, Ploetz learned of Goldman's undisclosed service years earlier in the

*Strunk* case. She moved the district court[1] to vacate the arbitration award under the Federal Arbitration Act, *see* 9 U.S.C. § 10, arguing Goldman had "evident partiality," *see id.* § 10(a)(2), and was guilty of "misbehavior by which [her] rights . . . have been prejudiced," *see id.* § 10(a)(3), since he failed to disclose his role in the mediation. The court denied the motion, holding that Ploetz did not show Goldman had "evident partiality" since there was "no evidence" that the "mediation with [Morgan Stanley] had any effect on the resolution of [her] claim." The court further held that Ploetz did not establish that Goldman was guilty of "misbehavior" either, since she did not assert that she was "deprived of a fair hearing." Ploetz appeals from the judgment denying her motion. We affirm, albeit on partially different grounds.

When a district court denies a motion to vacate an arbitration award, we review its findings of fact for clear error and conclusions of law de novo. *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 710 (8th Cir. 2011). It is undisputed that Ploetz and Morgan Stanley intended Goldman to be "impartial in both appearance and in fact." *See* FINRA Office of Dispute Resolution Arbitrator's Guide 17 (2017). It is also undisputed that FINRA Rule 12405(a)(4) required Goldman to "disclose" to the Director of FINRA's Office of Dispute Resolution any "past service as a mediator for any of the parties in the case" and that he did not do so. Ploetz does not contend that Goldman ever treated her or her case in a biased or improper manner: Her claims of "evident partiality" and "misbehavior" rest entirely on Goldman's failure to disclose that he once mediated the *Strunk* case, which also involved Morgan Stanley.

The district court held that, to prevail under 9 U.S.C. § 10(a)(2), Ploetz needed to show not only that Goldman had evident partiality, but that his partiality prejudicially affected the arbitration award. The court then denied her relief since there was "no evidence" that Goldman's undisclosed mediation had "any effect" on

---

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

the resolution of her arbitrated claim. But that was error: If an arbitrator was evidently partial, the district court may "assume" prejudice where as here the parties intended him to be "neutral." *Delta Mine Holding Co. v. AFC Coal Props.*, 280 F.3d 815, 821–22 (8th Cir. 2001). It is only where the parties agreed they could select interested arbitrators that a separate showing of prejudice is required to vacate an award under § 10(a)(2). *See Winfrey v. Simmons Food, Inc.*, 495 F.3d 549, 551 (8th Cir. 2007).

The parties disagree over the standard the district court should have used to determine whether there was "evident partiality" in Goldman. *See* 9 U.S.C. § 10(a)(2). Their disagreement may stem from the "absence of a consensus on the meaning of 'evident partiality'" amongst federal courts. *See Montez v. Prudential Sec., Inc.*, 260 F.3d 980, 983 (8th Cir. 2001). The Supreme Court has construed the term only once: In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), it held that there was evident partiality in a "supposedly neutral" arbitrator who did not disclose that one of the parties to the arbitration was a "repeated and significant" customer of his consulting business and that he had rendered services to the party "on the very projects involved in [the arbitration]." *See id.* at 146. But in reaching that holding the Court provided little guidance on how to evaluate cases where the arbitrator's undisclosed relationship reveals a relationship that is more tenuous. Our own case law reflects the "uncertainty" over the proper interpretation of the term "evident partiality" that followed the *Commonwealth Coatings* decision. *See Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157, 159 (8th Cir. 1995).

Our earliest constructions of the term indicated that evident partiality exists wherever an undisclosed relationship "creates an impression of possible bias." *See id.*; *see also PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship*, 187 F.3d 988, 995 (8th Cir. 1999). We later stated it exists wherever an undisclosed relationship "casts significant doubt on the arbitrator's impartiality." *See Delta Mine Holding*, 280 F.3d at 821–22. More recently, albeit in cases where the parties allowed interested arbitrators, we held that the relationship must "*objectively* demonstrate such a degree of partiality that a

reasonable person could assume that the arbitrator had improper motives." *See Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 750 (8th Cir. 2003); *see also Williams v. NFL*, 582 F.3d 863, 885 (8th Cir. 2009). So over time our interpretation of evident partiality has migrated in the salutary direction of its plain and ordinary meaning. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). We need not decide which of our constructions of the term binds us as a matter of circuit precedent, *see Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc), since Ploetz has not shown Goldman had evident partiality under any of them.

Ploetz does not warrant relief from the award under any of our evident-partiality standards since she does not explain how Goldman's undisclosed mediation of the *Strunk* case creates even an impression of possible bias. Ploetz provides us with scant information about the mediation: It must have occurred in or before 2014, it was confidential, it did not succeed, and it took place under the auspices of FINRA. Ploetz tells us that Morgan Stanley paid $1,375 for participation in the *Strunk* mediation—a $500 filing fee and a $875 session fee—and that is about all we know. Ploetz faults Morgan Stanley and FINRA for not providing her with more details about the *Strunk* mediation before she filed the motion to vacate, but her limited knowledge about the *Strunk* case works against her since she has the burden to prove evident partiality. *See Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014). Ploetz, moreover, did not ask the district court for discovery into the matter and thus cannot complain that Morgan Stanley and FINRA did not provide her with more information about the presumably "private and confidential" mediation. *See* FINRA Rule 14109(g).

We see nothing in Goldman's undisclosed mediation of a years-old, unrelated case that could create an appearance of bias. The fact that Morgan Stanley was a party to the mediation and that it paid $1,375 in fees does not indicate Goldman might have been biased toward it here: If such meager circumstances could create an impression of possible bias, Goldman would now be evidently partial toward Ploetz since she paid $2,700 in session fees and her share of the $1,425 filing fee for the arbitration.

Since Goldman timely disclosed the ten other cases he arbitrated where a member of the Morgan Stanley or Smith Barney family was a party, his undisclosed mediation of the *Strunk* case represented at most a trivial and inconsequential addition to that relationship. *See Dow Corning Corp.*, 335 F.3d at 750. So in the end the district court correctly held that Ploetz did not warrant relief under 9 U.S.C. § 10(a)(2). *See Smoky Hills Wind Project II, LLC v. City of Independence*, 889 F.3d 461, 468 (8th Cir. 2018).

Ploetz maintains nonetheless that the district court could have found evident partiality based on the fact that Goldman did not disclose a party relationship he was required to disclose under FINRA Rule 12405(a). She reasons that since the parties submitted her claim to arbitration under the FINRA Rules and since Rule 12405(a)(4) provides that "past service as a mediator" for a party is a circumstance "which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding," the court should not have "substituted its judgment for that of the parties . . . [and] FINRA" when it held that Goldman's failure to disclose his mediation of the *Strunk* case did not show he was evidently partial. Ploetz misreads Rule 12405(a)(4), however: It does not provide that party mediation always precludes an arbitrator from being impartial, but only that it "might." FINRA, moreover, does not decide when an arbitrator's undisclosed relationship with a party evidences partiality under 9 U.S.C. § 10(a)(2): Federal law "establishes the standard for vacatur of an arbitration award by a federal court, not the [FINRA] rules." *See Montez*, 260 F.3d at 984. So the mere fact that Goldman's nondisclosure of a past relationship with Morgan Stanley violated the FINRA Rules governing the arbitration did not provide the court with any basis to conclude that he was evidently partial. *See id.* Ploetz in any event does not explain why Goldman's undisclosed past service as a mediator in the *Strunk* case would have precluded him from being impartial here.

Ploetz further maintains that had she known about Goldman's past service as a mediator, she "could have" used her peremptory challenge to strike him from the list

-6-

of arbitrators who might replace Olander as chairperson. That, of course, is true. But the test for evident partiality does not turn on what the party seeking vacatur might have done with the undisclosed information (any new information might cause a party to strike an arbitrator), but on whether the undisclosed relationship demonstrates that the arbitrator had evident partiality. Here, it does not.

Ploetz asserts that both Goldman and FINRA (in appointing him) violated other FINRA Rules and that those violations also showed his evident partiality. She argues, for example, that Goldman executed his FINRA arbitrator's oath after the arbitration was over in contravention of FINRA Rule 12403(e)(4). None of the procedural errors Ploetz alleges indicates evident partiality in Goldman, however. They suggest at most an occasional failure to follow the FINRA Rules strictly, which is not an independent ground to vacate the award. *See Brown*, 762 F.3d at 819.

Ploetz seeks finally to vacate the award on the basis that Goldman was guilty of "misbehavior by which [her] rights . . . have been prejudiced." *See* 9 U.S.C. § 10(a)(3). She asserts she warrants relief since Goldman's failure to disclose his past service as a mediator in the *Strunk* case prejudiced her disclosure "rights" under the FINRA Rules. But arbitrator misbehavior that results only in the violation of a party's rights under a FINRA Rule is not significant enough to merit relief under § 10(a)(3). Instead, a party seeking to vacate an award "under § 10(a)(3) must show that he was 'deprived of a fair hearing.'" *See Brown*, 762 F.3d at 820. Ploetz, however, does not contend the arbitration was not fair: When asked at oral argument whether there were any irregularities in the arbitral hearings themselves, she said she had not alleged any. So the district court correctly denied her relief under § 10(a)(3) as well.

Affirmed.

_____